SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## In Re Declaratory Judgment Actions Filed By Various Municipalities, County Of Ocean, Pursuant To The Supreme Court's Decision In In re Adoption of N.J.A.C. 5:96, 221 N.J. 1 (2015)
### (A-1-16) (077565)

**Argued November 30, 2016 -- Decided January 18, 2017**

**LaVecchia, J., writing for a unanimous Court.**

In this interlocutory appeal, the Court considers whether the pent-up housing need that arose for persons in low- and moderate-income households formed during the sixteen-plus years since the expiration of the Council on Affordable Housing's (COAH) second housing cycle rules (Second Round rules) may be assessed as part of a municipality's third cycle housing obligation and captured under a present-need analysis.

Through the Mount Laurel line of cases, the Court recognized that municipalities have a constitutional obligation to use their zoning power in a manner that creates a "realistic opportunity for the construction of [their] fair share" of the region's low- and moderate-income housing. In 1985, the Legislature codified that constitutional obligation, enacting the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 to -329, and creating COAH to facilitate and monitor compliance with the constitutional mandate through the promulgation of rules for successive housing cycles. COAH adopted rules to govern its first and second housing cycles, but, after the Second Round rules expired in 1999, COAH failed to adopt a set of valid regulations to govern the third housing cycle (Third Round).

In March 2015, the Court reaffirmed the constitutional obligation, declared COAH defunct, and eliminated the FHA's exhaustion-of-administrative-remedies requirement. In re N.J.A.C. 5:96 & 5:97 (Mount Laurel IV), 221 N.J. 1 (2015). In its stead, the Court provided for a judicial forum to adjudicate affordable housing disputes, creating "a substitute for [COAH's] substantive certification process." Id. at 24. The Court held that the municipalities that had already obtained, or were in the process of obtaining, substantive certification from COAH could file declaratory judgment actions to confirm that their plans comported with their Mount Laurel obligations. Id. at 24-29. The Court emphasized that its holding did not eliminate fair share obligations from the prior rounds and that "prior unfulfilled housing obligations should be the starting point for a determination of a municipality's faire share responsibility." Id. at 30.

Approximately 300 declaratory judgment actions were commenced throughout the state, including actions by thirteen Ocean County municipalities. The Ocean County actions were consolidated to determine whether the Third Round housing obligation properly included the need that arose during the so-called gap period—the period since the expiration of the Second Round rules (i.e., 1999-2015). The municipalities, joined by the New Jersey State League of Municipalities (League), argued that fair share obligations have only two well-defined components— "present need" and "prospective need"—and that courts lack the authority to create a new component of need to account for the gap period. Fair Share Housing Center (Fair Share), the New Jersey Builders Association (NJBA), and private developers argued that the gap need must be captured as part of a town's affordable housing obligation.

The trial court held that inclusion of the need arising during the gap period in an assessment of the Third Round fair share obligation was a constitutional obligation. Importantly, the court held that such need was a "separate and discrete component" of the fair share obligation that could be calculated from the actual growth that accumulated during that time period.

The Appellate Division granted the Township of Barnegat's motion for leave to appeal and reversed the trial court's determination to address gap need as a new, "separate and discrete" component of the Third Round obligation. 446 N.J. Super. 259, 267 (App. Div. 2016). In rejecting the trial court's approach to the retrospective calculation of gap need, the panel asserted that its holding did not ignore the affordable housing need that arose from 1999 to 2015. The panel observed that, to the extent that "[low- and moderate-income] households formed during

the gap period" might be living in overcrowded or deficient housing, the need that arose during the gap would be "partially included" in the calculation of present need. Id. at 294.

The Court granted Fair Share's motion for leave to appeal.

**HELD**: Towns are constitutionally obligated to provide a realistic opportunity for their fair share of affordable housing for low- and moderate-income households formed during the gap period and presently existing in New Jersey. A form of present-need analysis under the Fair Housing Act—redefined to include a component premised on a calculation of those low- and moderate-income New Jersey households, newly formed since 1999, that presently exist and are entitled to their opportunity of access to affordable housing—provides the appropriate approach to addressing statewide and regional need. The modification of the previous definition of a present-need analysis is essential in order to address the failure of COAH to perform its required mission, in connection with a constitutional obligation, for a period of time affecting almost a generation of New Jersey citizens.

1. At bottom, the parties fundamentally disagree on whether the gap time period of need must be accounted for. There is no fair reading of the Court's prior decisions that supports disregarding the constitutional obligation to address pent-up affordable housing need for low- and moderate-income households that formed during the years in which COAH was unable to promulgate valid Third Round rules. The opportunity for immunity provided by this Court's substitute for substantive certification was premised on the value of the efforts of towns that received substantive certification from COAH during that interval or that otherwise could show steps taken to address affordable housing needs. That necessarily meant addressing the need of low- and moderate-income households that came into existence since 1999, and that still exists today. Here, the Appellate Division as well as the trial court (plus the other trial courts that have considered the matter) recognized, in their own ways, that there could be no hiatus in the constitutional obligation. The Court affirms that important aspect of the Appellate Division judgment. (pp. 16-17)

2. What separated the trial court and the Appellate Division panel in this matter is how to account for need arising during the gap period. The Court summarizes the parties' arguments on that subject. (pp. 17-19)

3. In Mount Laurel IV, the Court provided a process by which a town might obtain the equivalent of substantive certification. The Court gave preferred treatment to two categories of towns that voluntarily had put themselves in the queue before COAH. In return for submission to COAH's jurisdiction, the towns received the quid pro quo of protection from exclusionary zoning actions. In establishing an equivalent to substantive certification, the Court identified some parameters for the trial courts' actions. Beyond those, the Court did not limit the courts' work except to attempt to cabin the time within which progress would be made toward recapturing the lost opportunity. The Court now offers more specific guidance. (pp. 19-23)

4. The Appellate Division disagreed with the establishment of a free-standing gap-time calculation. According to the panel, the permissible categories within which to work were: unfulfilled prior cycle obligations, prospective need, and present need. Only present need was regarded as having the potential to capture pent-up housing need that arose during the gap period and that continues to be an identifiable category of housing need that experts could flesh out. The Court agrees with the appellate panel that "prospective need" is a more or less calcified term, having been used initially by the Court in its Mount Laurel decisions and later codified in the FHA. (pp. 23-25)

5. "Present need" is not defined in the FHA. The concept was identified by the Court and implemented similarly by COAH in prior adopted regulations. Importantly, it has not been used as an assessment based on household need for affordable housing; rather, its focus has been on the actual number of deficient housing units occupied by low- and moderate-income households. As the Appellate Division and the trial court concluded, the need of presently existing low- and moderate-income households formed during the gap period must be captured and included in setting affordable housing obligations for towns that seek to be protected from exclusionary zoning actions under the process the Court has set up while COAH is defunct. The Court agrees with the panel that the category of present need offers the better approach to capturing the need that must be addressed. The term is malleable and can address the circumstances presented now in order for the constitutional obligation to be fulfilled, not skirted. (pp. 25-28)

6. In current circumstances, the present-need analysis must be expanded to include, in addition to a calculation of overcrowded and deficient housing units, an analytic component that addresses the affordable housing need of presently existing New Jersey low- and moderate-income households, which formed during the gap period and are entitled to their delayed opportunity to seek affordable housing. The trial courts must take care to ensure that the

present need is not calculated in a way that includes persons who are deceased, who are income-ineligible or otherwise are no longer eligible for affordable housing, or whose households may be already captured through the historic practice of surveying for deficient housing units within the municipality. The Court acknowledges the possibility that the executive branch agency will resurrect and operate constitutionally, and further welcomes legislative attention to this important social and economic constitutional matter. (pp. 28-32)

As modified by this opinion, the judgment of the Appellate Division is **AFFIRMED**.

**JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. CHIEF JUSTICE RABNER did not participate.**

3

IN RE DECLARATORY JUDGMENT
ACTIONS FILED BY VARIOUS
MUNICIPALITIES, COUNTY OF
OCEAN, PURSUANT TO THE
SUPREME COURT'S DECISION IN
In re Adoption of N.J.A.C.
5:96, 221 N.J. 1 (2015).


Argued November 30, 2016 – Decided January 18, 2017

On appeal from the Superior Court, Appellate
Division, whose opinion is reported at 446
N.J. Super. 259 (App. Div. 2016).

Kevin D. Walsh argued the cause for
appellant Fair Share Housing Center (Mr.
Walsh, attorney; Mr. Walsh, Adam M. Gordon,
and Joshua D. Bauers, on the briefs).

Thomas F. Carroll, III, argued the cause for
respondent New Jersey Builders Association
(Hill Wallack, attorneys; Mr. Carroll and
Stephen M. Eisdorfer, on the briefs).

Jeffrey R. Surenian argued the cause for
respondent Township of Barnegat (Jeffrey R.
Surenian and Associates, attorneys; Mr.
Surenian, Michael A. Jedziniak, Erik C.
Nolan, and Michael J. Edwards, on the
briefs).

Edward J. Buzak argued the cause for
respondent New Jersey State League of
Municipalities (The Buzak Law Group,
attorneys).

Jonathan E. Drill argued the cause for
amicus curiae The Municipal Group (Stickel,
Koenig, Sullivan & Drill, attorneys).

1

Richard J. Hoff, Jr., submitted a brief on behalf of respondent Highview Homes, LLC (Bisgaier Hoff, attorneys; Mr. Hoff and Robert A. Kasuba, on the brief).

Edward J. Boccher submitted a letter brief on behalf of respondent Township of Brick (DeCotiis, FitzPatrick & Cole, attorneys).

Steven A. Kunzman submitted a letter brief on behalf of respondent Township of Toms River (DiFrancesco, Bateman, Kunzman, Davis, Lehrer & Flaum, attorneys).

Iraisa C. Orihuela-Reilly submitted a letter brief on behalf of amici curiae Disability Rights New Jersey, Supportive Housing Association of New Jersey, Collaborative Support Programs of New Jersey, Alliance for the Betterment of Citizens with Disabilities, New Jersey Association of Community Providers, The Arc of New Jersey, New Jersey Association of Mental Health and Addiction Agencies, Inc., Coalition of Mental Health Consumer Organizations, System of Care Association, New Jersey Psychiatric Rehabilitation Association, Mental Health Association in New Jersey, Advancing Opportunities, Inc., Community Access Unlimited, Community Health Law Project, and Autism New Jersey.

Catherine Weiss submitted a letter brief on behalf of amici curiae American Planning Association-New Jersey Chapter, New Jersey Future, and The Housing & Community Development Network of New Jersey (Lowenstein Sandler, attorneys).

Lawrence S. Lustberg and James D. Pollock submitted a brief on behalf of amici curiae New Jersey State Conference of the National Association for the Advancement of Colored People and Latino Action Network (Gibbons, attorneys).

2

Donald J. Sears submitted a brief on behalf of amicus curiae Township of South Brunswick.

Ronald L. Israel submitted a brief on behalf of amicus curiae Township of Colts Neck (Chiesa Shahinian & Giantomasi, attorneys).

Valentina M. DiPippo and Patrick Jhoo, Deputy Attorneys General, submitted a brief on behalf of amicus curiae Attorney General of New Jersey (Christopher S. Porrino, Attorney General of New Jersey, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel).

Kira S. Dabby submitted a letter in lieu of brief on behalf of amicus curiae Township of Middletown (Archer & Greiner, attorneys).

Michael B. Steib submitted a letter brief on behalf of amicus curiae Township of Millstone.

JUSTICE LaVECCHIA delivered the opinion of the Court.

For the last sixteen years, while the Council on Affordable Housing (COAH) failed to promulgate viable rules creating a realistic opportunity for the construction of low- and moderate-income housing in municipalities, the Mount Laurel constitutional affordable housing obligation[1] did not go away. Municipal responsibility for a fair share of the affordable housing need of low- and moderate-income households formed during that period was not suspended.  We now must address

---

[1] See S. Burlington Cty. NAACP v. Township of Mount Laurel, 92 N.J. 158 (1983); S. Burlington Cty. NAACP v. Township of Mount Laurel, 67 N.J. 151, appeal dismissed and cert. denied, 423 U.S. 808, 96 S. Ct. 18, 46 L. Ed. 2d 28 (1975).

3

arguments over constitutional compliance, specifically as it concerns municipal responsibility to address the housing need that arose during the past sixteen-plus years, to the extent that it still exists today.

In this interlocutory appeal, we consider whether the Appellate Division was correct in determining that the pent-up need that arose for persons in low- and moderate-income households formed during the years since expiration of COAH's second housing cycle rules (Second Round rules) may be assessed as part of a municipality's third cycle housing obligation and captured under a present-need analysis. The trial court in this matter concluded that the pent-up need should be captured using a new and distinct category of need. We now hold that a form of present-need analysis under the Fair Housing Act, N.J.S.A. 52:27D-301 to -329 (FHA) -- redefined to include a component premised on a calculation of those low- and moderate-income New Jersey households, newly formed since 1999, that presently exist and are entitled to their opportunity of access to affordable housing -- provides the appropriate approach to addressing statewide and regional need.

Our modification of the previous definition of a present-need analysis is essential in order to address the failure of COAH to perform its required mission, in connection with a constitutional obligation, for a period of time affecting almost

a generation of New Jersey citizens.  The prior understanding of present need was limited.  It was premised exclusively on a delineated standard for essentially substandard and overcrowded existing housing units; it did not focus on households eligible for affordable housing.  That previous definition would fail to ensure compliance with the Mount Laurel doctrine under the present circumstances.

As modified, we affirm the Appellate Division judgment.  We hold that, under the current circumstances, the present-need analysis must be expanded to guarantee municipal compliance with the Mount Laurel doctrine.  We authorize contested matters of municipal obligation to be resolved using a modified approach to present need in order to result in a fair judicial allocation of municipal obligation and assessment of municipal compliance, which can lead to the grant of immunity from exclusionary zoning actions under the process established by this Court.  See In re N.J.A.C. 5:96 & 5:97 (Mount Laurel IV), 221 N.J. 1, 19-20 (2015).

I.

The history of this matter has been recited recently enough and need not be extensively repeated.  Through the Mount Laurel line of cases, this Court recognized that municipalities have a constitutional obligation to use their zoning power in a manner that creates a "realistic opportunity for the construction of

5

[their] fair share" of the region's low- and moderate-income housing.  Mount Laurel IV, supra, 221 N.J. at 7 (alteration in original) (quoting S. Burlington Cty. NAACP v. Township of Mount Laurel (Mount Laurel II), 92 N.J. 158, 205 (1983), and citing S. Burlington Cty. NAACP v. Township of Mount Laurel (Mount Laurel I), 67 N.J. 151, 179, appeal dismissed and cert. denied, 423 U.S. 808, 96 S. Ct. 18, 46 L. Ed. 2d 28 (1975)).

In 1985, the Legislature codified that constitutional obligation, enacting the Fair Housing Act and creating COAH to facilitate and monitor compliance with the constitutional mandate.  In COAH, the Legislature vested responsibility for determining and assigning municipal affordable housing obligations, which would be accomplished through promulgation of procedural and substantive rules for successive housing cycles.  N.J.S.A. 52:27D-307, -308.

COAH adopted rules to govern its first and second housing cycles, but when the Second Round rules expired in 1999, COAH had not proposed new regulations for the third housing cycle.  In the sixteen-plus years that followed, COAH failed to adopt a set of valid regulations to govern the third housing cycle (Third Round).  Although COAH twice adopted Third Round rules,

reviewing courts found several key aspects of the regulations to be invalid and violative of the Mount Laurel doctrine.[2]

In March 2015, this Court responded to years of delay and uncertainty with Mount Laurel IV, reaffirming the constitutional obligation to create a realistic opportunity for the provision of affordable housing. Mount Laurel IV, supra, 221 N.J. at 3-4. Because COAH had failed to comply with the Court's prior Order directing that the agency take specific administrative steps culminating in the adoption of Third Round rules, we declared COAH defunct and eliminated the FHA's exhaustion-of-administrative-remedies requirement. Id. at 5-6, 16-17.

In its stead, we provided for a judicial forum to adjudicate affordable housing disputes once more. Id. at 5-6, 19-20. In so doing, we "provide[d] a substitute for [COAH's] substantive certification process," creating an avenue for municipalities to obtain immunity from challenges to their fair share plans. Id. at 24. We held that the municipalities that had already obtained, or were in the process of obtaining, substantive certification from COAH could file declaratory

---

[2] See In re Six Month Extension of N.J.A.C. 5:91-1 et seq., 372 N.J. Super. 61 (App. Div. 2004), certif. denied, 182 N.J. 630 (2005); In re Adoption of N.J.A.C. 5:94 & 5:95, 390 N.J. Super. 1 (App. Div.), certif. denied, 192 N.J. 71 (2007); In re Adoption of N.J.A.C. 5:96 & 5:97, 416 N.J. Super. 462 (App. Div. 2010), aff'd as modified, 215 N.J. 578 (2013).

7

judgment actions to confirm that their plans comported with their Mount Laurel obligations. Id. at 24-29.

To guide the designated judges who would be evaluating compliance with Mount Laurel obligations, we instructed the courts to follow certain guidelines "gleaned from the past." Id. at 29-30. Among other points, we directed that judges ascertain affordable housing need using the methodologies set forth in COAH's First and Second Round rules. Id. at 30. We also noted that many aspects of COAH's Third Round rules had not been invalidated by the appellate courts, and we authorized judges to evaluate municipal compliance using discretion similar to that afforded to COAH in the rulemaking process. Ibid. This Court emphasized that its holding did not eliminate fair share obligations from the prior rounds and that "prior unfulfilled housing obligations should be the starting point for a determination of a municipality's fair share responsibility." Ibid.

Approximately 300 declaratory judgment actions were commenced throughout the state. Pertinent to this appeal, thirteen Ocean County municipalities filed declaratory judgment actions to ascertain their fair share obligation for the Third Round.[3] On September 17, 2015, the trial court (the Honorable

---

[3] The municipalities include the townships of Barnegat, Berkeley, Brick, Jackson, Lacey, Little Egg Harbor, Manchester,

Mark A. Troncone, J.S.C., and the Honorable Marlene Lynch Ford, A.J.S.C., acting in concert -- hereinafter, the trial court) consolidated the thirteen cases to determine whether the Third Round housing obligation properly included the need that arose during the so-called gap period. As the issue unfolded before the trial court, that period was described to span the length of time since expiration of the Second Round rules through 2015 (i.e., 1999-2015). The trial court used the 2015 date by which towns had to file declaratory judgment actions to demonstrate constitutional compliance in order to obtain immunity. See Mount Laurel IV, supra, 221 N.J. at 21, 35.

The municipalities argued that fair share obligations have only two well-defined components -- "present need" and "prospective need" -- and that the courts lack "the authority to create . . . a new component" of need to account for the gap period. The New Jersey State League of Municipalities (League) intervened and joined the opposition to the inclusion of the gap need in any Third Round calculation. Fair Share Housing Center (Fair Share), the New Jersey Builders Association (NJBA), and private development companies also intervened, arguing that the gap need must be captured as part of a town's affordable housing obligation.

---

Ocean, Stafford, and Toms River, and the boroughs of Beach Haven, Pine Beach, and Point Pleasant.

To address the question, the parties submitted to the court and to the court-appointed Special Master expert reports analyzing whether the gap need could be a proper component of a municipality's Third Round fair share obligation. The League's expert, Econsult Solutions, Inc., found no "legally defined obligation" to address the gap need in the Third Round period -- a period which Econsult viewed as limited to the years 2015 to 2025. See N.J.S.A. 52:27D-307(c)(1) (defining housing cycles as ten-year periods). Therefore, it provided no estimate for the gap need.

In contrast, Art Bernard and Associates, L.L.C., on behalf of the NJBA, concluded that COAH's regulations, as well as the reality of affordable housing need in New Jersey, mandated that the gap need be included in a prospective-need analysis. Dr. David N. Kinsey, on behalf of Fair Share, stated that COAH's regulations and applicable case law supported the gap need's inclusion, either separately or in the cycle's prospective-need component, in the Third Round, which encompassed all years from 1999 to 2025 (inclusive of the ten-year period following 2015). Dr. Kinsey also advanced, essentially, two proposed formulas for calculating the gap need.

Based on those reports, the Special Master recommended to the trial court that the need arising in the gap period should be included in the Third Round fair share calculation and would

10

be properly calculated if a "separate and discrete" methodology unique to the gap period were used rather than inserting gap need into an assessment of prospective need.[4]

After reviewing the reports, but prior to any cross-examination of the experts about their opinions, on February 18, 2016, the trial court issued an opinion. It held that the inclusion of the need arising during the gap period in an assessment of the Third Round fair share obligation was a constitutional obligation.[5] The trial court relied on the

---

[4] During this phase of the litigation, the Special Master issued three reports to the trial court: (1) an October 30, 2015 report in which he agreed with Econsult that using a 1999-2025 period for the Third Round presents dangers of "overlapping and over counting" and "diverge[s] from the Prior Rounds," which limited prospective need to "future years only"; (2) a December 29, 2015 report that opined on the difficulty of accounting for the gap need, but concluded that an estimate may be determined; and (3) a February 17, 2016 report recommending the inclusion of the gap need in the Third Round as a separate component of fair share based in part on Dr. Kinsey's January 2016 formulas for capturing gap need.

[5] As the record of material submitted to this Court reveals, at approximately the same time that Judge Troncone issued his opinion, two other designated Mount Laurel judges addressed the issue of whether the gap need was a proper component of the Third Round obligation. Both reached the same essential conclusion as Judge Troncone. In Middlesex County, the Honorable Douglas Wolfson, J.S.C., found it an "inevitable conclusion" that the Third Round obligation would include a means for addressing the gap need because "ignor[ing] th[e] unmet need would be squarely at odds with the constitution and the Legislature's overarching intent to produce affordable housing." In Mercer County, the Honorable Mary C. Jacobson, A.J.S.C., adopted the portion of Judge Troncone's opinion "requiring the municipalities to include the 'gap period' unmet

11

principle, "first enunciated . . . in Mount Laurel II," that a "fair share obligation is cumulative" and therefore, the gap need must be addressed to the extent it could be "reliably calculated by rational means." The court also relied on COAH's prior attempts at promulgating valid Third Round rules, noting that every adopted version explicitly required "the gap need [to] be incorporated into the towns' [T]hird [R]ound obligation[s]."

Importantly, for present purposes, in holding that municipalities are constitutionally required to recognize need that arose during the gap period, the trial court held that such need was not a part of prospective need, but rather constituted a "separate and discrete component" of the fair share obligation. Without providing an express formula by which the gap need would be calculated, the trial court reasoned that the need arising from 1999 to 2015 could be calculated not by using projections into the future, as is typical of prospective need, but by relying on the actual growth that accumulated during that time period.

Accordingly, the trial court held that the Third Round obligation consisted of four components: (1) prior (First and Second) round unmet obligations; (2) the need arising during the

_____

affordable housing needs when calculating their Third Round obligations."

12

gap period; (3) a traditional present-need analysis; and (4) calculation of prospective need for the 2015-2025 period. To ease the burden on municipalities, the court emphasized that, except for prior unmet obligations, all of the components of need are subject to the FHA's 1000-unit cap, see N.J.S.A. 52:27D-307(e), and that the municipalities may elect "to defer up to 50 percent of [their] 'gap' obligation to the [F]ourth [R]ound."

The Township of Barnegat filed a motion for leave to appeal the trial court's legal conclusion that there must be a "gap need" component to the Third Round housing need. The Appellate Division granted the motion,[6] prompting Fair Share to file an emergent application for direct certification of the appeal; this Court denied the application, but expedited the appellate proceedings.

On July 11, 2016, the Appellate Division issued its decision. In re Declaratory Judgment Actions filed by Various Muns., Cty. of Ocean, Pursuant to the Supreme Court's Decision in In re Adoption of N.J.A.C. 5:96, 221 N.J. 1 (2015), 446 N.J.

---

[6]  The Appellate Division also granted amicus status to the townships of Millstone, Middletown, South Brunswick, and Colts Neck, as well as The Municipal Group (a consortium of municipalities interested in fair share methodology issues ensuing after issuance of Mount Laurel IV), the New Jersey Chapter of the American Planning Association, New Jersey Future, Disability Rights New Jersey, and The Housing and Community Development Network of New Jersey.

Super. 259 (App. Div. 2016). The Appellate Division focused on the trial court's determination to address gap need as a new, "separate and discrete" component of the Third Round obligation, which was derived from principles taken from previous assessments of prospective-need calculations for households. In reversing the trial court's determination on the issue framed in that manner, the appellate panel stated that "the FHA does not require a municipality to retroactively calculate a new 'separate and discrete' affordable housing obligation arising during the gap period." Id. at 267. The panel pointed to language of the FHA that prevents a retroactive calculation of "prospective need," which, the panel explained, is statutorily defined to be a forward-looking projection of household growth. Further, the panel rejected the trial court's creation of a "separate and discrete" gap need component, which it regarded as policymaking, in seeming contravention of cautionary language in Mount Laurel IV.

In rejecting the trial court's approach to the retrospective calculation of gap need, the panel asserted that its holding did not ignore the affordable housing need that arose from 1999 to 2015. The panel observed that, to the extent that "[low- and moderate-income] households formed during the gap period" might be living in overcrowded or deficient housing, the need that arose during the gap would be "partially included"

14

in the calculation of present need -- a term defined not in the FHA but in case law and in COAH's implementing regulations. Id. at 294 (alteration in original).

Fair Share filed with the Appellate Division an application seeking permission to file an emergent motion for a stay, which the Appellate Division denied on July 18, 2016. Fair Share then applied to this Court, and we remanded Fair Share's stay motion to the Appellate Division for consideration in accordance with the Court Rules. After an appellate panel denied a stay, Fair Share filed an application for a stay with this Court and sought leave to appeal.

On September 8, 2016, we granted leave to appeal and imposed a stay of the Appellate Division's judgment, pending expedited review by this Court. We also denied a later emergent application by municipalities for a "temporary stay of all trials on the fair share issues pending the Court's rulings" on this appeal. We are informed that, in the wake of that action, twelve of the thirteen declaratory judgment actions have been settled. In those cases, the parties have resolved the municipalities' fair share obligations for the time period running from 1999 through 2025. We are also informed that, statewide, there have been seventy-one settlements reached as of the time of argument in this matter.

15

Barnegat, the only remaining municipality in this appeal, has settled all issues in this matter except for the obligation to account for any need arising during the gap period. Accordingly, the present appeal involves only one contested municipality, although resolution of the legal issue will impact other unresolved declaratory judgment actions brought by municipalities seeking to take advantage of the prospect of immunity offered by the process created in this Court's 2015 decision.

## II.

At bottom, the parties fundamentally disagree on whether the gap time period of need must be accounted for. Secondarily the arguments have raised the question of: if so, then how?

As to the fundamental disagreement -- whether the gap period must be addressed -- we waste no time in settling that issue. There is no fair reading of this Court's prior decisions that supports disregarding the constitutional obligation to address pent-up affordable housing need for low- and moderate-income households that formed during the years in which COAH was unable to promulgate valid Third Round rules. The opportunity for immunity provided by this Court's substitute for substantive certification was premised on the value of the efforts of towns that received substantive certification from COAH during that interval or that otherwise could show steps taken to address

16

affordable housing needs.  Mount Laurel IV, supra, 221 N.J. at 21, 24-29.  That necessarily meant addressing the need of low- and moderate-income households that came into existence since 1999, and that still exists today.

The Appellate Division as well as the trial court (plus the other trial courts that have considered the matter) incorporated, in their own ways, the recognition that the need that arose during the gap period was a responsibility of the municipalities.  Indeed, both decisions below inherently recognized that there could be no hiatus in the constitutional obligation.  We agree and, therefore, affirm that important aspect to the Appellate Division judgment.

What separated the trial court and Appellate Division panel in this matter is how to account for need arising during the gap period.  On that, we summarize in Section III the respective positions of the parties and amici, combining arguments that have commonality.

### III.

While the specifics of the arguments advanced by the parties and amici have evolved during the filing of successive briefs at the various stages of this litigation and in connection with arguments advanced by amici, appellant and respondents' chief positions nonetheless remain essentially unchanged from those advanced before the Appellate Division.

17

Fair Share, the NJBA, and amici in support of their position argue that the need that arose during the gap period must be included in an assessment of the Third Round housing obligation because it would contravene the Mount Laurel doctrine to simply ignore for sixteen years a municipality's constitutional obligation to provide a fair share of regional affordable housing need. For support, they point to, among other things, the FHA. Fair Share and its supporters regard the FHA as containing provisions indicative of a legislative intent that affordable housing need be calculated cumulatively, without a break in time that would ignore household needs arising during the gap period. Fair Share, the NJBA, and amici assert that the intricacies of calculating each municipality's fair share obligation should be left to the trial courts and their consideration of expert analyses. Indeed, the NJBA contends that whether the need that arose during the gap period should factor into a municipality's present-need calculation is something for trial courts to resolve on a case-by-case basis, because this Court never restricted "present need" to "physically substandard housing units occupied by low and moderate income households."

On the other hand, Barnegat, the League, and their respective amici argue, emphasizing the plain language of the FHA, that the Third Round obligation is limited to prior unmet

18

obligations, present need, and prospective need; a separate gap need is not included in the statute. According to Barnegat, the League, and their amici supporters, the Third Round obligation does not include the need that arose during the gap period because such need no longer exists today. Finally, Barnegat and the League contend that the Appellate Division decision cannot be read to incorporate the gap need into present need because "present need," under its current definition, is measured in housing units and as of "a fixed point in time" and therefore cannot have a retrospective component. Amicus, The Municipal Group, acknowledged during oral argument that the definition of present need could be expanded to include pent-up, but still-existing, need that arose during the gap period in a municipality's calculation of its constitutional obligations under Mount Laurel.

IV.

A.

In Mount Laurel IV, supra, confronted by COAH's prolonged and ultimately unfruitful efforts to promulgate rules for assessing and identifying municipal compliance with housing obligations, this Court (1) recognized COAH to be a nonfunctioning agency; (2) eliminated the FHA's exhaustion-of-administrative-remedies requirement and reopened the courts to Mount Laurel litigants; and (3) provided a process by which a

19

town might obtain the equivalent of substantive certification for its fair share housing plan and avoid exclusionary zoning actions, after a court assessed the town's fair share responsibility. 221 N.J. at 5-6, 19-20.

Because the Court gave favorable treatment to (1) towns with plans in progress that received substantive certification from COAH under earlier iterations of Third Round rules, id. at 24-27, or, to a lesser degree, (2) towns that had signed on as participants before COAH as the regulatory process was playing out but whose active compliance was as yet unknown, id. at 27-29, those towns were expected to meaningfully satisfy their obligations owed to low- and moderate-income households being formed during the gap period. That expectation certainly animated the Court's different, and better, treatment of towns that had already started taking meaningful steps toward compliance during that period, in some form. See id. at 26 (mentioning "generous" treatment toward towns that had achieved substantive certification); id. at 27 (suggesting more favorable treatment for towns that took action toward implementing housing plans addressing then-quantified fair share obligations versus towns that merely filed for participation status but took no further steps to address need at that time).

That prospect of preferred treatment for those two categories of towns came from a background of events that had

taken place leading up to our 2015 Opinion and Order. First, there was COAH's consistent work toward adopting regulations that invariably sought to encompass the time period of housing need since the Second Round rules expired in 1999. See N.J.A.C. 5:94-1.4 (2004); 36 N.J.R. 3691(a), 3704, 3753 (2004); 40 N.J.R. 2690(a), 2719 (2008). Second, there was the compelling inference to be drawn that the towns, which voluntarily put themselves in the queue before COAH, willingly accepted responsibility for the need arising while COAH worked to adopt controlling rules for that very time period and going forward. See Mount Laurel IV, supra, 221 N.J. at 21-23. In return for their submission to COAH's jurisdiction, the towns received the quid pro quo of protection from exclusionary zoning actions. See In re Six Month Extension, supra, 372 N.J. Super. at 78-80. In setting forth an equivalent to substantive certification, we aimed to establish a judicial analogue to further that process. See Mount Laurel IV, supra, 221 N.J. at 29 (describing judicial remedy provided as "one that seeks to track the processes provided for in the FHA").

Although we gave the trial courts considerable flexibility in assessing need, allocating it by region and municipality, and in evaluating municipal plans for compliance, we did identify some parameters for the courts' actions. Id. at 29-33.

Growth share analysis for prospective need was precluded on the ground that it was contrary to the FHA. Id. at 25 (citing In re Adoption of N.J.A.C. 5:96 & 5:97, 215 N.J. 578, 605 (2013)); see also id. at 33. We sought to streamline proceedings and directed courts to use familiar methodologies from the past. Id. at 30. The prior methodologies that the Court identified included reference to the First and Second Round methodologies, ibid., which avoided an assessment of prospective need based on growth-share. See In re Adoption of N.J.A.C. 5:96 & 5:97, supra, 215 N.J. at 600.

The Court also referenced aspects or portions of the failed Third Round rules that had not been invalidated by the courts in prior reviews. Mount Laurel IV, supra, 221 N.J. at 30–33. Examples were listed for illumination but without limitation to the discretion being afforded to the trial courts.

Beyond that, we did not limit the work of the trial courts except to attempt to cabin the time within which progress would be made toward recapturing the lost opportunity to advance municipal compliance with affordable housing obligations. Id. at 33 (granting courts "flexibility in assessing a town's compliance" and encouraging courts to "endeavor to secure, whenever possible, prompt voluntary compliance from municipalities in view of the lengthy delay in achieving satisfaction of towns' Third Round obligations"). Plainly, we

22

need now to be more specific.  It is two years since our 2015 decision.

The Appellate Division disagreed with the trial court's choice to establish a free-standing gap-time calculation. According to the Appellate Division, the permissible categories within which to work, when considering how to accommodate need arising during the sixteen-plus gap-time years, were: unfulfilled prior cycle obligations, prospective need, and present need.  In re Declaratory Judgment Actions Filed by Various Muns., supra, 446 N.J. Super. at 293.  As the Appellate Division analysis distilled, the first category -- unfulfilled prior cycle obligations -- was expressly directed by this Court. See id. at 267 (citing Mount Laurel IV, supra, 221 N.J. at 30). It appears that the panel regarded that category as limited exclusively to previously identified obligations from earlier cycles, which ended in 1999.  Id. at 278, 280 (relying on trial court and experts' treatment of prior round obligations as those carried over from First and Second Rounds).  Prospective need was declared an inapt fit for the gap need arising between 1999 and 2015 because the FHA definition rendered the term forward-looking, and therefore not conducive to a retrospective calculation of need arising during the gap period.  Id. at 282, 284.  Only present need was regarded as having the potential to

23

capture pent-up housing need that arose during the sixteen-plus years of the gap period and that continues to be an identifiable category of housing need that experts could flesh out.  Id. at 294, 295.

We agree with the Appellate Division that "prospective need" is a more or less calcified term at this point.  It was a concept used initially by this Court in its Mount Laurel decisions.  See Mount Laurel II, supra, 92 N.J. at 256-58 (explaining approaches to calculating prospective need).  The term was later codified in the FHA.  In setting parameters for COAH, the FHA defined prospective need as "a projection of housing needs based on development and growth which is reasonably likely to occur in a region or a municipality" within the next housing cycle.  N.J.S.A. 52:27D-304(j).  By that definition, prospective need is forward looking.  It is predictive -- a projection of future need.  The statutory language was not designed to account for past periods of time when performing a calculation of anticipated housing need for low- and moderate-income households.  COAH has followed suit in its rules, implementing the FHA's codified definition.  See N.J.A.C. 5:92-1.3 (defining prospective need in First Round rules as "a projection of low and moderate housing needs based on development and growth which is reasonably likely to occur in a region or a municipality").  Such need would be calculated by

24

estimating "the share of future households that are low and moderate income and as such require affordable housing." N.J.A.C. 5:92-5.6.

"Present need," on the other hand, is not defined in the FHA. The concept was identified initially by this Court, Mount Laurel II, supra, 92 N.J. at 243, and implemented similarly by COAH in prior adopted regulations. Importantly, it has not been used as an assessment based on household need for affordable housing.

COAH's First Round rules defined "present need" as "the total number of deficient housing units occupied by low or moderate income households as of July 1, 1987." N.J.A.C. 5:92-1.3 (emphasis added). The First Round rules detailed that the present-need calculation would equate to the sum of a region's "indigenous need" (or the "actual or capped deficient housing occupied by low and moderate income households," N.J.A.C. 5:92-5.2) and "reallocated present need" (or "the share of excess deficient housing which must be distributed to municipalities designated in whole or in part as growth area," N.J.A.C. 5:92-5.4). N.J.A.C. 5:92-5.5. The focus of "present need" has been on "the actual number of deficient housing units occupied by low- and moderate-income households." In re Twp. of Warren, 132 N.J. 1, 14 (1993) (emphasis added). Estimating existing

deficient units is a snapshot of current need within a municipality.

The Second Round rules, when adopted in 1994, retained the First Round's definitions of present and prospective need, N.J.A.C. 5:93-1.3; the various adopted Third Round rules continued to regard their prospective- and present-need analogues as forward-looking calculations and snapshots of deficient units within a municipality, respectively, see N.J.A.C. 5:94-1.4 (2004). Notably, however, the Second Round housing obligation calculations were adjusted to incorporate some retroactivity in analytic application.[7] Those actions by COAH, as separately described in footnote seven, were never challenged by municipalities at the time, presumably because the retroactive adjustments worked to the municipalities' advantage. However, the validity of those adjustments is not conceded by

---

[7] Rather than incorporating a purely forward-looking approach in 1994 when promulgated, the Second Round rules were adopted to procedurally govern the six-year period spanning from 1993-1999 (rather than 1994-2000). See N.J.A.C. 5:93-2.7. In so doing, COAH utilized a continuous calculation of present and prospective need that included and covered the one-year gap between the First and Second Round regulations. See 26 N.J.R. 2300(a), 2347 (1994).

The Second Round Rules also added a new component to a municipality's fair share obligation called "prior cycle prospective need," N.J.A.C. 5:93-1.3, by which COAH recalculated the First Round's prospective need to comport with actual household growth during the First Round using the 1990 Census data, resulting in truer and lower assessments of need, N.J.A.C. 5:93-2.8(a).

the municipalities in this action to be a sound basis for utilizing a similar retroactivity analysis in respect of the gap period. We acknowledge the past practice of COAH as a matter of historical record. Further, we acknowledge that the trial court considered such techniques previously employed by COAH in fashioning its approach to retroactive capturing of gap period obligations for low- and moderate-income households.

None of the expert reports addressing the gap need have, as yet, been tested through cross-examination, and the unexamined reports have not yet resulted in any court-ordered assessment of need at the time this appeal began its ascent through the appellate process. It is not for us, as an appellate court, to reconcile untested expert reports. That is a job for the trial courts. But, we can refine the guidance provided to the courts in approaching the quantification of municipal fair share obligations under competing analyses of experts to be subjected to examination, as necessary.

C.

We conclude, as did the Appellate Division panel and the trial court, that the need of presently existing low- and moderate-income households formed during the gap period must be captured and included in setting affordable housing obligations for towns that seek to be protected from exclusionary zoning actions under the process this Court has set up while COAH is

27

defunct.  See Mount Laurel IV, supra, 221 N.J. at 24-29.

Attending to that need is part of the shared responsibility of

municipalities.  We hold that towns are constitutionally

obligated to provide a realistic opportunity for their fair

share of affordable housing for low- and moderate-income

households formed during the gap period and presently existing

in New Jersey.

That said, we agree with the Appellate Division that the

category of present need offers the better approach to capturing

the need that must be addressed.  In re Declaratory Judgment

Actions Filed by Various Muns., supra, 446 N.J. Super. at 295.

We originally defined present need in Mount Laurel II, supra,

based on the circumstances faced at the time.  92 N.J. at 243.

The term is malleable and can address the circumstances

presented now in order for the constitutional obligation to be

fulfilled, not skirted.  Present need does not have to be

limited to a survey approach to housing units.  "Need" for

prospective-need analytical purposes devolves into an assessment

for households meant to be benefitted by the constitutional

obligation.  See N.J.S.A. 52:27D-304(j).  Present need can and

should be similarly applied, when, as here, we must be concerned

about existing households, formed during the gap period, that

need affordable housing today.  A present-need analysis

therefore must be expanded in current circumstances.  It must

28

include, in addition to a calculation of overcrowded and deficient housing units, an analytic component that addresses the affordable housing need of low- and moderate-income households created since 1999, provided that the households remain income-eligible and situated in New Jersey, and are not calculated in a way that includes persons now deceased or whose households may be already captured through the historic practice of assessing deficient housing units within the municipality.

The panel emphasized that flexibility in its holding, similarly suggesting a permissible expansion in the analysis of identifiable need submitted to a trial court through expert presentations.  The panel stated that its holding "does not ignore housing needs that arose in the gap period or a municipality's obligation to otherwise satisfy its constitutional fair share obligations."  In re Declaratory Judgment Actions Filed by Various Muns., supra, 446 N.J. Super. at 293-94.  The panel cited the trial court's Special Master's comments, when reviewing the competing experts' reports, acknowledging that "[low- and moderate-income] households formed during the gap period may no longer represent an affordable housing need due to a variety of reasons including death, changes in income, increase or decrease in household size, retirement and/or relocation outside of New Jersey."  Id. at 294 (alteration in original).  However, as the panel noted, the

29

Special Master observed that gap period housing need would only be "partially included by those living in over[]crowded or deficient housing units that are encompassed in the new calculation of [p]resent [n]eed." Ibid. (alterations in original) (internal quotation marks omitted). Thus, the panel intimated that, when reviewing for present need through examination of expert reports and testimony, the trial court's scope might be elastic enough to consider capturing still-existing "identifiable housing need characteristics."[8] Ibid.

Although each used different "need" categories, the Special Master was recommending to the trial court, and the Appellate Division was embracing, a common intent to capture the households formed during the gap period and to avoid double-counting in the process. There was much commonality to the bottom line result sought by each, subject of course, to review of details presented through expert reports and cross-examination on the opinions rendered. That detailed review awaits on remand.

---

[8] In quoting this language from the Appellate Division's decision, this Court is not adopting any particular party's expert's opinion on such characteristics, which are a matter of dispute. Rather, we find the phrase useful only to describe the practice in which the experts will have to engage to convince the trial courts as to what characteristics should be included when providing a fair estimate of the need that arose during the gap period and remains unmet today.

We now modify the Appellate Division judgment to make express what is necessary in order to properly assess fully the pent-up affordable housing need of low- and moderate-income New Jersey households created during the gap period. We hold that, in determining municipal fair share obligations for the Third Round, the trial courts must employ an expanded definition of present need. The present-need analysis must include, in addition to a calculation of overcrowded and deficient housing units, an analytic component that addresses the affordable housing need of presently existing New Jersey low- and moderate-income households, which formed during the gap period and are entitled to their delayed opportunity to seek affordable housing. The trial courts must take care to ensure that the present need is not calculated in a way that includes persons who are deceased, who are income-ineligible or otherwise are no longer eligible for affordable housing, or whose households may be already captured through the historic practice of surveying for deficient housing units within the municipality.

In providing clarification for the trial courts' handling of the remaining declaratory judgment actions, we do not discount the possibility that the executive branch agency will resurrect and operate constitutionally. Additionally, we recognize, as we have before, that the Legislature is not foreclosed from considering alternative methods for calculating

31

and assigning a municipal fair share of affordable housing, and to that end, we welcome legislative attention to this important social and economic constitutional matter.  See Mount Laurel IV, supra, 221 N.J. at 34; In re Adoption of N.J.A.C. 5:96 & 5:97, supra, 215 N.J. at 620.

V.

As modified by this opinion, the judgment of the Appellate Division is affirmed.


JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.  CHIEF JUSTICE RABNER did not participate.