**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2633-18T1

IN RE CLINTON TOWNSHIP
COMPLIANCE WITH THIRD
ROUND MOUNT LAUREL
AFFORDABLE HOUSING
OBLIGATION.

_____

Argued January 7, 2020 – Decided January 30, 2020

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0315-15.

Jeffrey Leon Kantowitz argued the cause for appellant Clinton 94, LLC (Law Office of Abe Rappaport, attorneys; Jeffrey Leon Kantowitz, of counsel and on the briefs).

Kevin D. Walsh argued the cause for respondent Fair Share Housing Center (Kevin D. Walsh, on the brief).

Jonathan Edward Drill argued the cause for respondent Township of Clinton (Stickel, Koenig, Sullivan & Drill, LLC, attorneys; Jonathan Edward Drill, of counsel and on the brief; Kathryn J. Razin, on the brief).

PER CURIAM

In this Mount Laurel[1] case, defendant-intervenor Clinton 94, LLC (Clinton 94) appeals from the final judgment of compliance and repose entered by the Law Division on January 9, 2019, in accordance with Mount Laurel IV, 221 N.J. at 30. The final judgment approved a settlement agreement entered between plaintiff Clinton Township (the Township) and the Fair Share Housing Center (FSHC). The agreement established the Township's Third-Round fair share obligation for affordable housing and provided a plan for its compliance.

On appeal, Clinton 94 argues the trial court should have required the proposed compliance plan to include over-zoning, that is, planning and zoning for more units than needed to satisfy the Township's fare share obligations, in order to provide a realistic opportunity of success. Clinton 94 further argues the trial court failed to evaluate the feasibility of the sites provided in the Township's fair share plan. We affirm.

I.

On July 2, 2015, the Township filed a verified complaint seeking a declaratory judgment establishing that it satisfied its fair share of affordable

---

[1] "The Mount Laurel series of cases recognized that the power to zone carries a constitutional obligation to do so in a manner that creates a realistic opportunity for producing a fair share of the regional present and prospective need for housing low-and moderate-income families." In re N.J.A.C. 5:96 and 5:97, 221 N.J. 1, 3-4 (2015) (Mount Laurel IV).

A-2633-18T1

housing for its Third-Round <u>Mount Laurel</u> obligation. Clinton 94, the developer of a property not included in the Township's proposed plan as a potential site, filed a motion to intervene, which the trial court granted. The court also appointed Michael Bolan, PP, ACIP, as a Special Master in the case.

Following immunity and intervention proceedings, the parties engaged in extensive negotiations. While the Township and Clinton 94 failed to resolve their differences, the negotiation process proved successful between the Township and FSHC,[2] which entered into an initial settlement agreement in December 2017, and then an amended settlement agreement (the Amended Agreement) in February 2018. The Amended Agreement set forth the Township's total affordable housing obligations and provided a compliance plan in order to meet those obligations. The agreement recognizes the Township has the following affordable housing obligations:

| | |
|---|---|
| Rehabilitation Obligation | 10 |
| Prior Round Obligation (pursuant to N.J.A.C. 5:93) | 335 |

---

[2] In <u>Mount Laurel IV</u>, the Supreme Court endorsed FSHC's interest in the Third Round proceedings under review. The Court explained, "If a municipality seeks to obtain an affirmative declaration of constitutional compliance, it will have to do so on notice and opportunity to be heard to FSHC and interested parties." 221 N.J. at 23. Trial courts "will be assisted in rendering [their] preliminary determination[s] on need by the fact that all initial and succeeding applications will be on notice to FSHC and other interested parties." <u>Id.</u> at 29.

> Third Round (1995-2025) 337
> Prospective Need, which includes the
> Gap Period Present Need, recognized
> by the Supreme Court In re
> Declaratory Judgment Actions Filed
> By Various Municipalities, 227 N.J.
> 508 (2017)

In order to satisfy the Township's Third-Round prospective need of 337 units, the Agreement identifies multiple compliance mechanisms. It included four projects: the Marookin site, a 100-percent affordable site for 58 units and 58 bonus credits (116 in total); the LeCompte site,[3] a 100-percent affordable housing site for 89 units; Headley Farms, an inclusionary development, for 104 units, based on a 26-percent set aside; and Alton Place, an inclusionary rental development for 28 units, based on a 20-percent set aside. All the proposed sites, except the Marookian site, were subject to durational adjustments pursuant to N.J.A.C. 5:93-4.3, because the Township did not have adequate new water and sewer capacity at the time. Thus, about 65 percent of the Township's proposed third-round obligation was subject to a durational adjustment.

---

[3] The initial agreement included the 89-unit Windy Acres site. The LeCompte site replaced Windy Acres site in the Agreement and contains the same number of units.

In sum, the four proposed Third-Round sites included two developments, Marookian and LeCompte, that were 100-percent affordable and publicly subsidized, as well as two inclusionary developments, Headley Farms and Alton Place, that would include a mix of market-rate and affordable homes. Together, the four sites anticipated 279 affordable homes, plus 58 rental bonuses, which satisfied plaintiff's 337-unit third-round obligation. Nonetheless, three of the four sites did not have access to adequate utilities at the time but were entitled to a durational adjustment.

The Township agreed to make substantial efforts in order to obtain access to the necessary public utilities. The Amended Agreement requested the trial court continue its appointment of the Special Master for the purpose of assisting the Township with compliance and advising the court regarding its efforts to obtain approvals from state and local agencies. The Township also agreed to adopt a housing element and fair share plan, a spending plan, and ordinances providing for the amendment of its affordable housing ordinance and zoning ordinance. In addition, the Township agreed to make a $30,000 donation to the FSHC to use for the advancement of affordable housing.

Clinton 94 timely filed written objections to the Agreement, along with a summary of testimony and exhibits from its principal, David Meiskin. Its

written objections contended the Agreement's proposed compliance plan failed to meet the constitutional standard of "realistic opportunity." See S. Burlington County NAACP v. Mt. Laurel, 92 N.J. 158 (1983) (Mount Laurel I).

The Special Master issued a report dated February 5, 2018 recommending the trial court approve the Amended Agreement's proposed compliance plan. The trial court initially scheduled a fairness hearing for February 12, 2018. In light of the Amended Agreement, the court rescheduled the fairness hearing for March 19, 2018.

On March 2, 2018, Clinton 94 filed a supplemental written objection letter. In a supplemental report dated March 12, 2018, the Special Master continued to recommend the approval of the Amended Agreement.

At the fairness hearing, the Township, FSHC, Clinton 94 and all other interested parties appeared, represented by counsel. The Township and Clinton 94 each presented expert testimony.

The Township relied on the testimony of Joseph Burgis, an expert in city planning, who previously served as a court-appointed special master in other affordable housing cases. Burgis summarized the Agreement and reviewed the water and sewer issues, updating the court as to the Township's latest compliance efforts. He opined "that the [Amended] Agreement is fair and

reasonable to the needs of low- and moderate-income households[,]" and provided extensive testimony regarding the basis of his opinion. Addressing the Township's infrastructure issues, he explained:

> Clinton Township has a problem of overcoming the water and sewer issue that we talked about, but the plan even addresses that. It goes so far as to say after a certain period of time if those issues cannot be overcome, then the municipality should then be considering alternatives to that in terms of increasing densities on the inclusionary sites or finding other sites. But given the fact of the capacity issue, I think this is about as good as you're going to get and I think it clearly enables the construction of all the Affordable Housing developments spelled out in a plan [over time].

David Meiskin, a real estate developer, testified for Clinton 94. The Township and FSHC objected to Meiskin testifying as an expert, citing his lack of professional licensure and formal education. The trial court permitted his testimony as an expert in site selection and development, finding he demonstrated expertise beyond that of a layperson in those areas. Nonetheless, the court consistently sustained opposing counsels' objections to answers provided by Meiskin regarding his opinion as to the various sites' likelihood of success. Meiskin presented opinion testimony concerning the economic feasibility of the Marookian and Headly Farms sites due to inadequate utilities. He also claimed the LeCompte site presented environmental issues.

7

On the second day of the fairness hearing, the court heard the testimony of its Special Master, Michael Bolan, who provided testimony consistent with his reports, recommending the court approve the Amended Agreement. On cross-examination, Clinton 94 asked Bolan whether he was able to evaluate the financial information provided regarding the 100-percent affordable developments. Bolan confirmed his prior experience in evaluating project pro formas and indicated that he would review what the Township submitted during the compliance phase. At the close of the fairness hearing, the court allowed Clinton 94 to place its remaining contentions on the record. Noting the various conditions the Township must satisfy for the proposed plan to succeed, Clinton 94 requested the court consider over-zoning and aggressive monitoring.

On April 3, 2018, the court issued an amended order approving the Amended Agreement preliminarily. In its inclusive accompanying opinion, the court evaluated the Amended Agreement under the five-part analysis set forth in East/West Venture v. Borough of Fort Lee, 286 N.J. Super. 311, 329 (App. Div. 1996). The court concluded that the settlement "provides for a substantial amount of affordable housing and satisfies the criteria set forth by the Appellate Court in East/West Venture."

As to "consideration of the number of affordable units being constructed," the court found the Amended Agreement's 337 total units of credit were reasonable. The court noted the methodology used to calculate the number of affordable units provided followed the prior round methodology used by the Council on Affordable Housing (COAH) in 1994. The court found that COAH's methodology had "been utilized in over 170 settlements throughout the State. Of those, approximately 45 of the settlements involve municipalities in Vicinage XIII.[4]"

Next, the court considered "other contributions by the Township and other components of the [Amended Agreement] that contribute to the satisfaction of the constitutional obligation." In addition to the Township's extensive individual assurances, the court noted the Township's commitment to take the steps necessary to amend and implement its fair share plan, including zoning for inclusionary developments and pursuing water and sewer utilities for inclusionary and municipally-sponsored projects.

---

[4] A Vicinage is an administrative unit of trial divisions of the New Jersey Superior Court comprising of a specific geographical area, which includes one or more counties. Vicinage XIII includes Somerset County, Hunterdon County, and Warren County.

The court also addressed Clinton 94's objections. After a thorough review of those arguments, the court found it "unnecessary and unwarranted under the circumstances" that the Township include additional projects, such as Clinton 94's property. The court noted that once a reasonable number of affordable units have been determined and included in the plan, it becomes the Township's reasonable discretion as to whether it would or should include additional units. The court declined to include a requirement that the Township over-zone to meet its fair share obligation. Further, the court rejected much of the testimony provided by Meiskin, finding his testimony

> (1) lacked the necessary expertise to opine on key facts and issues that [supported] his oppositions; (2) [his] testimony was oft times spotty, not buttressed by credible documentation and lacked coherence; and (3) [his] testimony appeared to the Court to be a thinly veiled effort to support his own proposal and thus his testimony was tainted with bias.

The court concluded Clinton 94's arguments that the proposed plan was "unrealistic and unachievable" were meritless.

Instead, the court found the Township's plan "provides an imaginative, proactive, comprehensive and realistic plan to accommodate for the needs of low- and moderate-income households." Furthermore, the court recognized that issues and conditions may arise and cause the proposed projects to change;

however, it found the Amended Agreement "certainly anticipates those events in several ways that protect the interests of the parties and the [p]rotected [c]lass." The court also acknowledged the Amended Agreement provided numerous monitoring and reporting requirements which would ensure the protected classes' interests are advanced. The court therefore agreed to the continued appointment of the Special Master for the purpose of assisting the municipality and advising the court regarding agency approval and general monitoring.

The court found the Amended Agreement adequately advanced the interests of low- and moderate-income households and approved it subject to the conditions and milestones contained within the Special Master's report. The court scheduled a compliance hearing for December 20, 2018.

In advance of the compliance hearing, Clinton 94 again submitted written objections and an exhibit, maintaining its argument that the mechanisms were unsatisfactory and again requested the court consider over-zoning. The Township produced documentation demonstrating its compliance with the court's April 3, 2018 order and the approved Amended Agreement. At the hearing, the Special Master reviewed the documents submitted by the parties and Clinton 94 continued its request for over-zoning.

On January 9, 2019, the court entered a final judgment of compliance and repose through 2025 in favor of the Township. The order provided the Township's fair share plan and other documents satisfied "the Township's Mount Laurel constitutional obligations under the Fair Housing Act of 1985, N.J.S.A. 52:27D-301 et seq. [] and under the Mount Laurel line of cases, specifically, Mount Laurel IV, 221 N.J. 1 (2015), and Mount Laurel V, 227 N.J. 508 (2017)." The court issued a second comprehensive decision, accepting the Special Master's recommendations and again rejecting Clinton 94's over-zoning request.

II.

On appeal, Clinton 94 challenges the compliance judgment issued by the trial court, contending the Township's Amended Agreement with FSHC, as incorporated into the Township's fair share plan, does not provide a realistic opportunity for the construction of affordable housing. It argues the compliance plan required over-zoning to provide a realistic opportunity of success. It further argues the trial court erroneously gave undue deference to the Township's Amended Agreement with FSHC without adequately evaluating the feasibility of the proposed developments. Based on our review of the record and the trial court's two comprehensive written opinions, Clinton 94's arguments lack substantive merit.

A final determination made by a trial court conducting a non-jury case is "subject to a limited and well-established scope of review." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). We review a trial court's interpretation of law de novo, Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); however, we give "deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015). We will not "not disturb the factual findings and legal conclusions of the trial judge" unless convinced that those findings and conclusions were "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974).

Under Mount Laurel I, a municipality has a constitutional obligation to provide a "realistic opportunity" for the development of its fair share of affordable housing. 92 N.J. at 221. Whether an opportunity is "realistic" is determined in a practical and objective way: "whether there is in fact a likelihood — to the extent economic conditions allow — that the lower income housing will actually be constructed." Id. at 222. "Municipalities need not guarantee that the required amount of affordable housing will be built, but must only adopt land use ordinances

13

that create a realistic opportunity to meet the regional need and their own rehabilitation share."  In re Adoption of N.J.A.C. 5:94 & 5:95 By New Jersey Council On Affordable Housing, 390 N.J. Super. 1, 54 (App. Div. 2007).

Trial courts adjudicating Mount Laurel declaratory judgment actions "should employ flexibility" in assessing a municipality's compliance plan.  Mount Laurel IV, 221 N.J. at 33.  The Fair Housing Act of 1985 (FHA) and the Municipal Land Use Law authorize municipalities to use various means to provide for their "fair share of low[-] and moderate[-]income housing."  N.J.S.A. 52:27D-311(a).  See also N.J.S.A. 40:55D-8.7(a).

The rules used by COAH, which Mount Laurel IV requires trial courts use, support the judgment under review.  See 221 N.J. at 29-34.  The applicable rules do not mention over-zoning, which has not been required for municipalities voluntarily complying in Mount Laurel actions for more than three decades, since the adoption of the FHA,  N.J.S.A. 52:25D-301 to -329.9, in 1985.  The trial court addressed over-zoning in both of its opinions, properly concluding the Township has discretion whether to over-zone and it reasonably elected not to do so, finding it unnecessary and unwarranted.

In addition, the rules broadly permit municipalities to incorporate publicly subsidized, 100-percent affordable developments into their fair share plans, so long

as municipalities support those developments if they do not receive the expected funding. The court and the Special Master both scrutinized the fair share plan and were satisfied with its feasibility, given the Township's extensive assurances. Moreover, the court noted that the Township is required to adjust the plan if certain benchmarks are not met. The judgment also provides for the ongoing involvement of the Special Master to assist in overseeing compliance.

We conclude the record contains sufficient credible evidence to support the trial court's finding that the Amended Agreement sets forth a plan that provides a realistic opportunity for the Township to meet its Third-Round obligation under Mount Laurel. The court correctly found that the Township established a prima facie case of compliance, and the burden then shifted to Clinton 94 to establish that it failed to do so.

The record also supports the trial court's finding that over-zoning is not required. As noted by the FSHC, the Township is required to adjust its plan if certain benchmarks are not met with regard to sites for which new water or sewer capacity is not available. Clinton 94 failed to identify any issue the trial court failed to address in concluding the Township's fair share plan presented a realistic opportunity for the development of affordable housing. We discern no basis to disturb the trial court's judgment.

15

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2633-18T1