NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5699-16T3

MATTHEW P. TERRANOVA,
KAREN L. TERRANOVA, and
NEW LAND HOLDINGS, LLC,

       Plaintiffs-Appellants,

v.

GENERAL ELECTRIC PENSION
TRUST, ATLANTIC RICHFIELD
CO., CHARLES BORIS, JR.,
CAROL BORIS, and EDWARD
WILGUCKI,

       Defendants-Respondents,

and

U-HAUL OF NORTHERN
NEW JERSEY, INC., U-HAUL
INTERNATIONAL, INC.,

       Defendants,

and

AMERCO REAL ESTATE
COMPANY,

       Defendant/Third-Party
       Plaintiff-Respondent,

v.

> **APPROVED FOR PUBLICATION**
>
> **January 4, 2019**
>
> **APPELLATE DIVISION**

18 PETRO CORP. and PITSTOP
EXPRESS, INC.,

    Third-Party Defendants.

_____

Argued October 3, 2018 – Decided January 4, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6691-15.

Amy E. Robinson argued the cause for appellants Matthew P. Terranova, Karen L. Terranova, and New Land Holdings, LLC (The Killian Firm, PC, attorneys; Eugene Killian, Jr., on the brief).

Michael C. Falk argued the cause for respondents General Electric Pension Trust and Atlantic Richfield Company (Reed Smith LLP, attorneys; Michael C. Falk, of counsel and on the brief; Robert P. Frank and David G. Murphy, on the brief).

Elizabeth Callaghan Flanagan argued the cause for respondents Charles Boris, Jr., Carol Boris and Edward Wilgucki (Purcell, Mulcahy & Flanagan, LLC, attorneys; Elizabeth Callaghan Flanagan, on the brief).

David J. Mairo argued the cause for respondent Amerco Real Estate Company (Chiesa Shahinian & Giantomasi, PC, attorneys; David J. Mairo, Michael K. Plumb, Thomas R. McCarthy (Consovoy McCarthy Park, PLLC) of the Virginia bar, admitted pro hac vice, and Caroline A. Cook (Consovoy McCarthy Park, PLLC) of the Virginia bar, admitted pro hac vice, on the brief).

The opinion of the court was delivered by

MOYNIHAN, J.A.D.

Matthew P. Terranova, Karen L. Terranova and New Land Holdings, LLC (collectively: plaintiffs), the owners of a commercial property long used as a gas station, appeal from orders granting motions for summary judgment filed by defendants General Electric Pension Trust and Atlantic Richfield Company (collectively: GE defendants), Amerco Real Estate Company,[1] and Charles Boris, Jr., Carol Boris and Edward Wilgucki (collectively: Boris defendants). Plaintiffs allege defendants were dischargers liable pursuant to the New Jersey Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 to -23.24, for contribution toward the cost of clean-up and removal of hazardous substances, N.J.S.A. 58:10-23.11f(a)(2)(a), based on: the GE defendants' ownership and operation of the property from 1960 to 1973, during which "soil and groundwater contamination began in approximately 1963" from three underground storage tanks (USTs) designated as "E1-E3"; the Boris defendants' ownership and operation of the property

_____

[1] The order granting summary judgment to Amerco indicates it was the successor to defendant U-Haul Co. of Northern New Jersey, improperly pled as U-Haul of Northern New Jersey, Inc. Plaintiffs' complaint asserts the improperly-pled U-Haul defendant owned and operated the property from 1976 through 1980.

from 1973 to 1976; and Amerco's ownership and operation of the property, directly or by its predecessor in interest from 1976 to 1980 when Amerco sold the property to plaintiffs. Plaintiffs argue the trial court's basis for granting defendants' motions – the doctrine of judicial estoppel – should not be invoked to preclude them from pursuing claims against defendants for remediation of the property pursuant to the Spill Act "[b]ecause of the complexities of environmental investigation [regarding discharges] and the broad remedial purposes of the Spill Act"; they also contend "[j]udicial estoppel is not a defense recognized by the Spill Act."

We cannot readily discern from the record the basis for the trial court's decision. In their merits brief, the GE defendants, citing simply to their notice of motion for summary judgment, contend they posed judicial estoppel and the entire controversy doctrine as grounds for summary judgment. The notice of motion, however, does not mention those affirmative defenses. And they now, as they did at oral argument before the trial court, argue both judicial estoppel and the entire controversy doctrine preclude plaintiffs' claim.

Amerco and the Boris defendants aver that they advanced judicial estoppel, collateral estoppel and the entire controversy doctrine as grounds for summary judgment; Amerco's notice of motion for summary judgment, however, lists only collateral and judicial estoppel as grounds, and they

advanced only those theories at oral argument before the trial court. The Boris defendants' notice of cross-motion for summary judgment does not list any theory. On appeal Amerco does not advance the entire controversy doctrine as a ground for preclusion, only both forms of estoppel. The Boris defendants now argue all three doctrines preclude plaintiffs' claim. None of the defendants' briefs in support of their summary judgment motions appears in the record, so we are unable to ascertain what arguments were advanced in the trial proceedings.

Adding to the confusion, only the amended order granting Amerco's summary judgment motion sets forth judicial estoppel as the basis for the trial court's decision. The other orders grant the motions and dismiss plaintiffs' complaint without stating a reason. The court's oral decision on the motions is interspersed with colloquy with plaintiffs' counsel, thwarting appellate review. Based on the blue-penciling of "collateral estoppel" on the face of the amended order, we infer the court addressed only judicial estoppel as a basis for granting Amerco's motion. We note, however, that the court made no mention of collateral estoppel or the entire controversy doctrine in its oral decision.

Notwithstanding this omission, see R. 1:7-4(a) (requiring the motion judge to make factual findings that are supported by the record and explain legal conclusions in a manner amenable to appellate review); see also Estate of

Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018), all parties agree that the court's summary judgment decisions were based on judicial estoppel.

On that record, we affirm the trial court's grant of summary judgment to all defendants. Judicial estoppel is a defense to Spill Act claims for contribution and its application was proper under the material circumstances of this case which we now review in the light most favorable to plaintiffs. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Plaintiffs leased the property to Keith Friedman and Michael Puccio who operated a gas station there from 1981 until 2008. Before commencing their operation, Puccio and Friedman relined E1-E3 with an epoxy coating in May 1981. The company which relined the tanks provided Puccio and Friedman with a ten-year warranty. Puccio and Friedman used the tanks until 1993 when new tanks were installed. They sold the gas station operation in 2008 and vacated the property.

In May 2010, Matthew Terranova (Matthew) amended an action he had filed against Puccio and Friedman related to an escrow agreement, adding claims alleging Puccio's and Friedman's environmental contamination of the property, including one for contribution under the Spill Act. The case proceeded to arbitration before retired Judge Robert A. Longhi who adopted

the findings set forth in a report authored by Matthew's expert, Eikon Planning and Design, LLC, and found for Matthew. The arbitrator's decision, finding Puccio and Friedman liable to reimburse Matthew $45,000 for expended remediation costs and requiring them to "take over the remediation process" was reduced to final judgment on February 6, 2012. Friedman and Puccio did not fulfill the obligations imposed by the judgment.

Matthew hired Verina Consulting Group, LLC as an environmental consultant in 2015 after parting ways with Eikon. Verina conducted further studies and concluded that "soil and groundwater contamination . . . associated with the gasoline storage and handling" began on the property "on or before 1963 and continued until [E1-E3] were removed in 2000."

On November 10, 2015, plaintiffs filed the present action against defendants based on Verina's conclusions. In the course of discovery, defendants became aware of plaintiffs' initial litigation against Puccio and Friedman and filed motions for summary judgment.[2]

We abide by our familiar standard of review that mandates summary judgment be granted if the court determines "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a

_____

[2] Plaintiffs aver the motions were filed after plaintiffs' depositions were taken, but before the completion of discovery.

judgment or order as a matter of law." R. 4:46-2(c). We consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party. Brill, 142 N.J. at 540. We review the trial court's decision in these matters de novo, and afford the trial court's ruling no special deference. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016).

"We review a trial court's decision to invoke judicial estoppel using an abuse of discretion standard." In re Declaratory Judgment Actions filed by Various Municipalities, Cty. of Ocean, 446 N.J. Super. 259, 291 (2016) (citing State, Div. of Motor Vehicles v. Caruso, 291 N.J. Super. 430, 438 (App. Div. 1996)), aff'd, 227 N.J. 508 (2017). A court abuses its discretion when a decision "is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal–Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

We are unpersuaded by plaintiffs' argument that judicial estoppel is not a recognized defense to Spill Act claims, and that the defenses to Spill Act claims are limited to "an act or omission caused solely by war, sabotage, or

God, or a combination thereof," N.J.S.A. 58:10-23.11g(d)(1). And we do not agree that the Supreme Court's rejection of a statute of limitations defense to the Spill Act, Morristown Assocs. v. Grant Oil Co., 220 N.J. 360 (2015), supports plaintiffs' position.

In Morristown Associates, the Court observed that the contribution section of the Spill Act provides

> "[a] contribution defendant shall have only the defenses to liability available to parties pursuant to [N.J.S.A. 58:10-23.11g(d)]." N.J.S.A. 58:10-23.11f(a)(2)(a) (emphasis added). The language of the statute expressly restricting the defenses available under the Spill Act provides significant support for a conclusion that no statute of limitations applies. The Spill Act's incorporation of the defenses enumerated in N.J.S.A. 58:10-23.11g(d) limits defendants to the following defenses: "an act or omission caused solely by war, sabotage, or God, or a combination thereof." That list does not include a statute of limitations defense.
>
> [220 N.J. at 381 (alterations in original).]

Although the Court concluded the Legislature intended that all individuals are limited to the subsection (d) defenses, it rejected an argument that the exclusion of defenses in the contribution provision

> deprives a defendant of other unlisted defenses that should presumably be maintained, such as challenges to venue, service of process, and subject matter jurisdiction. Such defenses are established by court rules under the jurisdiction of the Supreme Court and are not subject to overriding legislation. Statutes of

limitations, by contrast, are a product of the Legislature. See State v. Short, 131 N.J. 47, 55 (1993).

[Id. at 382.]

Adhering to the Court's logic, judicial estoppel is not a defense subject to any overriding legislation and, as such, it may be maintained against a Spill Act claim. The doctrine is an equitable principle, Bahrle v. Exxon Corp., 279 N.J. Super. 5, 22 (App. Div. 1995), designed to "prevent litigants from 'playing fast and loose with the courts,'" Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996)). We have equated the doctrine's policy concerns with those that buttress the entire controversy doctrine: to resolve a controversy in one judicial proceeding "because 'fragmented and multiple litigation takes its toll on not only the parties but the judicial institution and the public.'" Ibid. (quoting Cogdell v. Hospital Ctr. at Orange, 116 N.J. 7, 23 (1989)).

Although not created by a court rule, judicial estoppel is required by Rule to be affirmatively pled. R. 4:5-4. Moreover, it is rooted in the judiciary's interest in protecting the integrity of the judicial process. It is not a product of the Legislature; unlike the statute of limitations, it was not

10                                                                    A-5699-16T3

abrogated by the limitation of defenses in the contribution provisions of the Spill Act.

We are also convinced that judicial estoppel precludes plaintiffs' present Spill Act claims. Although it is an equitable principle, judicial estoppel differs from equitable estoppel. Bahrle, 279 N.J. Super. at 22. We previously recognized Oneida's differentiation of judicial estoppel from equitable estoppel, in that the former "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." Cummings, 295 N.J. Super. at 385 (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3rd Cir. 1988)).

Judicial estoppel most commonly applies when a party takes inconsistent positions in different legal actions, ibid., and the party succeeds in maintaining one of those positions, id. at 386. "If a court has based a final decision, even in part, on a party's assertion, that same party is thereafter precluded from asserting a contradictory position." Id. at 387-88. Our Supreme Court explained the salutary policy considerations underpinning the application of the doctrine:

> [W]here a party has prevailed on a litigated point,
> principles of judicial estoppel demand that such party

be bound by its earlier representations. See <u>McCurrie v. Town of Kearny</u>, 174 N.J. 523, 533 (2002) (concluding that "judicial estoppel . . . precludes a party from taking a position contrary to the position he has already successfully espoused in the same or prior litigation"[)].

[<u>Guido v. Duane Morris LLP</u>, 202 N.J. 79, 94-95 (2010).]

The Court's mandate to preclude this type of litigation strategy is particularly warranted here.

In the action against Puccio and Friedman, Matthew contended they alone were the culpable dischargers. That position ignored contentions that were set forth in Eikon's report which cautioned that there were "numerous discrepancies in the historic record regarding the reported condition of the former USTs and the conditions encountered at the property with respect to the alleged discharges and contamination." The report noted Puccio and Friedman contended in their answers to interrogatories that, prior to lining tanks E1-E3 in 1981, testing revealed the "tanks were corroded and were leaking a mixture of gasoline and water into the ground." The report also stated Puccio and Friedman described the tanks before they were lined as "'rotted' [and] had 'holes' in them."

The Eikon report refuted Puccio's and Friedman's contentions,[3] pointing out: no statutorily-required reports of spill activity in 1981 were made to a regulatory agency; Puccio and Friedman opted to reline the corroded tanks "instead of disassociating themselves from these reportedly flawed UST systems and installing new tanks at that time"; the company that relined the tanks did not report any tank problems; the relining company would not have applied coating material to corroded tanks because the warranty provided by the relining company required the application of the coating material to suitable surfaces free from holes.

The Eikon report placed responsibility for all discharges on Puccio and Friedman. The expert posited that the contaminants found in the soil and groundwater samples it tested were discharged during Puccio's and Friedman's tenure because the leaked chemicals were first introduced as gasoline additives in the 1980s. The expert opined the small presence of lead in the samples contraindicated leakage prior to the 1980s because its use as a gasoline additive was discontinued in 1973.

---

[3] We note that the report begins with Eikon's statement that it "was retained by [Matthew through his then counsel] to provide expert environmental services with regard to [Matthew's] position as a [p]laintiff in the case" against Puccio and Friedman.

During the arbitration proceedings, Matthew advanced, to great effect, evidence that the property was contaminated only when Puccio and Friedman were in possession. The decision to disregard the possibility that other dischargers – from whom plaintiffs now seek contribution – were responsible under the Spill Act and pursue only Puccio and Friedman is the type of inconsistent practice necessitating application of the judicial estoppel doctrine. Guido, 202 N.J. at 94-95. The disclosures by Puccio and Friedman were sufficient to put plaintiffs on notice of possible claims under the Spill Act which requires proof "only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to [N.J.S.A. 58:10-23.11g]." N.J.S.A. 58:10-23.11f(a)(2)(a). See Lynch v. Rubacky, 85 N.J. 65, 70-71 (1981) (holding a claim accrues when a plaintiff "learns, or reasonably should learn, the existence of that state of facts which may equate in law with a cause of action" that is based upon the material facts of the case (quoting Burd v. N.J. Tel. Co., 76 N.J. 284, 291 (1978))). The Spill Act imposes joint and several liability "without regard to fault, for all cleanup and removal costs" upon "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance." N.J.S.A. 58:10-23.11g(c)(1). "A party even remotely responsible for causing contamination will be deemed a responsible party under the Act." In re Kimber Petroleum Corp., 110 N.J. 69,

85 (1988). Matthew's stance against Puccio and Friedman, ignoring evidence of other possible culpable dischargers, is the type of practice that plays "fast and loose," Ryan Operations G.P., 81 F.3d at 358, with the judicial system. Instead of one proceeding against all possible dischargers, the judicial process is now burdened with a fragmented action.

The circumstances here justify application of judicial estoppel, an equitable doctrine. While the present defendants may be able to conduct testing at the property, the passage of over five years between the filing of suits presents hardships. Defendants are now required to rely on the ability to recall events and reconstruct records from 1963 to 1981. Further, the testimony from the arbitration proceedings was not recorded; the statements upon which the arbitrator imposed liability on Puccio and Friedman are not available to defendants. The truth-seeking mission of the judiciary is impaired by plaintiffs' actions.

Application of the doctrine does not preclude property owners from seeking contribution from dischargers under the Spill Act. It simply compels owners to pursue, in a single action, dischargers which are known or reasonably knowable from the circumstances. That is the principle underlying judicial estoppel, and of the equitable principles of collateral estoppel and the

15                                                                                      A-5699-16T3

entire controversy doctrine. The integrity of the judicial process depends on compliance with those principles.

We recognize that judicial estoppel may be invoked only in limited circumstances because it is an extraordinary remedy. In re Declaratory Judgment, 446 N.J. Super. at 292. The circumstances of this case however, even viewed in the light most favorable to plaintiffs, compel application of that remedy. Employment of judicial estoppel to this Spill Act case is consonant with the Act's objective: "remedial legislation designed to cast a wide net over those responsible for hazardous substances and their discharge on the land and waters of this state." Morristown Assocs., 220 N.J. at 383. Concomitantly, casting that net over all dischargers in a single action upholds the integrity of the judicial system; plaintiffs are precluded from floating a lazy cast toward one discharger and then shooting a second line toward others, seeking contribution for clean-up of the same property. The trial court did not abuse its discretion in basing summary judgment on the doctrine of judicial estoppel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5699-16T3