**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4725-17T1

MY EZ WEB SOLUTIONS, INC.
and JOSEPH V. THOMAS,

     Plaintiffs-Appellants,

v.

JOSEPH P. THOMAS and
SYMBIOSIS EDUCATIONAL
CONSULTANTS, INC.,

     Defendants-Respondents.

_____

Argued March 26, 2019 – Decided May 24, 2019

Before Judges Yannotti, Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-7382-17.

Joseph V. Meyers argued the cause for appellants.

Maurizio Savoiardo (Miranda Slone Sklarin Verveniotis) of the New York Bar, admitted pro hac vice, argued the cause for respondents (Miranda Slone Sklarin Verveniotis, attorneys; Michael A. Miranda and Maurizio Savoiardo, on the brief).

PER CURIAM

Plaintiffs appeal from an order dated March 29, 2018, which dismissed their complaint with prejudice pursuant to Rule 4:6-2(e) for failure to state a claim upon which relief can be granted. Plaintiffs also appeal from an order dated May 25, 2018, which denied their motion for reconsideration. We reverse.

I.

In October 2017, plaintiffs filed a complaint in the trial court, which they thereafter amended. Plaintiffs alleged that in February 2007, defendant Joseph P. Thomas (JPT) contacted plaintiff Joseph V. Thomas (JVT) with a business proposal. At the time, JPT was employed by Fairleigh Dickinson University (the University) in a full-time management position with responsibility for decisions regarding online education. According to an exhibit attached to the complaint, JPT is married to the daughter of JVT's second cousin.

JPT allegedly agreed that he would provide outsourced information technology (IT) services to the University in his spare time and bill the University through a New Jersey entity that JVT would incorporate. All payments from the University to JPT would be deposited in a bank account in the name of JVT's corporation. On April 5, 2007, JPT established My EZ WEB Solutions, Inc. (Solutions).

2

On April 16, 2007, JVT sent JPT a letter memorializing a conversation they had a few days earlier. In the letter, JVT stated that he was the president, secretary, treasurer, and sole owner of Solutions. JVT appointed JPT as Chief Executive Officer (CEO) of Solutions, but stated that JPT could not hire employees without his prior approval.

The letter also stated that JPT was required to report Solutions' monthly gross revenue to JVT. If Solutions' monthly gross revenue for any month exceeded $2000, JVT was to receive forty percent of that revenue. In addition, the letter stated that if JPT received permanent resident status in the United States and created another corporation, JVT also was to receive forty percent of the gross revenue from that entity.

Thereafter, JVT and JPT opened a corporate bank account for Solutions, which listed JVT and JPT as the persons who were authorized to sign on behalf of the corporation. Moreover, according to the complaint, JPT repeatedly reported to JVT that the monthly gross revenues from the University were less than $2000.

In mid-2012, JPT requested JVT's advice regarding his relationship with the University. Plaintiffs claim the University had questioned JPT about his activities and requested a letter from the owner of Solutions stating that JPT was

3

not outsourcing work to himself for personal financial gain. JVT wrote a letter to the University stating that he was the sole owner of Solutions. Plaintiffs allege that several weeks later, JPT told JVT that he had been forced to resign from the University due to "'inappropriate' financial activities."

Plaintiffs further allege that JPT continued to seek business advice from JVT, including advice regarding "serious problems" that JPT had with a regulatory agency in New York State concerning a corporation that JPT had established. That corporation also engaged in IT outsourcing, but was larger and had more employees. JPT met with JVT and informed him that JPT could be liable for "numerous possible [sic] serious . . . business violations" in New York. JVT claims he provided JPT with "proper business advice."

In June 2017, JVT spoke with an employee of the University while waiting on line in a donut shop. This individual allegedly told JVT that the University had fired a person with a similar name, and that person had "bilked" the University of more than $2 million. JVT contacted JPT and asked for Solutions' bank records, and any records pertaining to the gross receipts JPT received for billing the University for outsourced IT business. JPT refused to provide JVT with the requested documents and information.

A-4725-17T1

Thereafter, JVT obtained Solutions' bank records, which allegedly showed that $66,000 had been deposited into the account on March 1, 2012, and on March 14, 2012, the same amount had been withdrawn. The bank records also allegedly showed that another $1500 had been withdrawn from the account on March 15, 2012, and deposits totaling $15,000 had been made in January 2015 and March 2016. JVT removed JPT as a co-signatory on the account.

Plaintiffs alleged JPT breached his agreement with JVT by failing to provide him with forty percent of the gross receipts that JPT received from the University for the outsourced IT services. Plaintiffs also alleged JPT breached the implied covenants of good faith and fair dealing by: failing to "provide faithful and honest services to" Solutions; failing "to provide accurate reports of the gross revenues" he received; "misus[ing] his position as CEO [of Solutions] to . . . charge personal expenses to the" corporation; and "otherwise . . . fail[ing] to comply with [his] agreement" with JVT.

Plaintiffs also asserted claims of legal and equitable fraud. They alleged JPT knowingly and intentionally lied about the amount of monthly gross receipts he received from the University by stating that they were significantly below $2000 per month, and that no payments or distributions were due to Solutions. They claimed JPT violated the agreement by "caus[ing] invoices to . . . be sent

out under the name of [another] [c]orporation, believed to be [defendant] Symbiosis, Inc." (Symbiosis), and depositing those payments in a bank account other than the account for Solutions. They alleged JPT knowingly made false material representations to JVT regarding the agreement with the intent that plaintiffs would rely upon them.

In addition, plaintiffs asserted claims of conversion, embezzlement, theft, and unjust enrichment against defendants. They claimed JPT breached his fiduciary duty and sought to pierce the corporate veil of Symbiosis and hold JPT personally liable. Plaintiffs sought compensatory and punitive damages, interest, costs of suit, attorney's fees, and such other relief that the court deemed just and equitable.

On February 6, 2018, defendants filed a motion to dismiss pursuant to Rule 4:6-2(e) for failure to state a claim upon which relief can be granted. Defendants argued that plaintiffs' claims are barred by judicial estoppel because JVT failed to disclose in a bankruptcy petition an ownership interest in Solutions or claims to monies owed to that corporation. Defendants further argued that the claims against Symbiosis for fraud, conversion, theft, embezzlement, breach of fiduciary duty, and to pierce the corporate veil should be dismissed on other grounds.

A-4725-17T1

In support of their motion, defendants submitted to the court a copy of a voluntary petition in bankruptcy that JVT and his wife filed on September 30, 2015, in the United States Bankruptcy Court for the District of New Jersey. In that petition, JVT stated that he did not have any interest in any "incorporated [or] unincorporated businesses"; any "[i]nterest[] in partnerships or joint ventures"; or any "[a]ccounts receivable" owed to him.

In the petition, JVT also stated that he did not have any interest in any "[o]ther contingent or unliquidated claims" and JVT stated he was not a director, executive, or more than five percent shareholder in any business. Defendants also presented the order of the bankruptcy court dated February 3, 2016, which granted JVT and his wife a discharge in bankruptcy.

In further support of their motion, defendants submitted documents showing that in November 2009, JPT's wife had incorporated Symbiosis, and that she was the sole owner of that corporation. According to defendants, JPT and his spouse successfully worked for Symbiosis developing online educational content. Defendants also claimed that in February 2017, JPT formally dissolved Solutions.

Plaintiffs opposed the motion. They argued that judicial estoppel did not apply because JVT's failure to state in the bankruptcy petition that he had an

interest in Solutions or that Solutions had any claims against defendants was merely "a benign omission." Plaintiffs also argued that they had pled sufficient facts to support the claims against Symbiosis.

In opposing the motion, JVT submitted a certification in which he disputed defendants' assertion that he never had an ownership interest in Solutions. He also stated that he did not assert that he had an interest in Solutions in his bankruptcy petition because he filed his bankruptcy petition in 2015. JVT said that at that time, Solutions "was an inactive entity and the omission of the stock from [his] list of assets . . . was at best a technical oversight."

JVT also stated that it was his belief that Solutions had not earned any income since the University terminated JPT's employment in 2012. He asserted that he did not know who filed the certificate dissolving Solutions, but said, "it was not me." JVT further asserted that JPT used his wife to establish Symbiosis, and then utilized that corporation to receive the income JPT earned from the University, thereby depriving him of his forty-percent share of the income.

The judge entered an order dated March 29, 2018, granting the motion to dismiss. On the order, the judge wrote that the complaint was barred by judicial estoppel because in his bankruptcy filing, JVT stated that "he had no interest in

any incorporated or unincorporated business." The judge did not address JVT's assertion that his failure to disclose in the bankruptcy action his interest in Solutions or his claims against defendants was a "technical oversight." The judge also did not address defendants' contention that plaintiffs failed to plead sufficient facts to assert their claims against Symbiosis.

Plaintiffs thereafter filed a timely motion for reconsideration. In support of that motion, JVT submitted a certification in which he stated that when he filed his bankruptcy petition, he did not list Solutions as an asset because, to his knowledge, the corporation had been "defunct and non-operational for at least" three years. JVT stated that Solutions "was not an asset," and the corporation did not have any known claims. He said that if he had known Solutions had a claim against defendants, he would have listed the corporation's stock and the particular claim in his petition.

JVT also asserted that he did not know Solutions had been dissolved in February 2017. He stated that when he became aware that he had viable claims against defendants, he retained an attorney, who filed the complaint. He noted that in November 2017, he sent an e-mail to the bankruptcy trustee, and sent her a copy of the complaint in this matter. JVT stated that the trustee had declined to reopen his bankruptcy case "at this time."

Defendants opposed the motion. They argued that plaintiffs failed to meet the standard for reconsideration and had improperly submitted "new evidence" on the motion. They contended that the court had correctly decided to dismiss the complaint on the basis of judicial estoppel.

Defendants also asserted that JVT had improperly submitted a "self-serving" e-mail to the bankruptcy trustee, in an effort to convince the court that he failed to disclose his interest in Solutions in good faith. They argued that the court had properly drawn the inference that JVT had acted in bad faith by securing the benefit of a discharge in bankruptcy without disclosing his interest in Solutions and making those potential assets available for distribution to creditors.

The judge denied the motion for reconsideration. On the order, the judge wrote that plaintiffs had not shown that the court's prior decision was palpably incorrect or that the court had not considered relevant evidence. The judge stated that for purposes of applying judicial estoppel, it was irrelevant whether a party's prior representation was made in good faith.

The judge also stated that she had properly considered JVT's bankruptcy documents since they are public records. The judge concluded she was not

required to convert the motion to dismiss under Rule 4:6-2(e) to a motion for summary judgment under Rule 4:46.  This appeal followed.

## II.

On appeal, plaintiffs argue that because the parties presented the court with factual material outside the pleadings, the court erred by failing to convert the application to a motion seeking summary judgment.  We agree.

"In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'"  Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) (quoting Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004)).  Where "matters outside the pleadings are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided by R[ule] 4:46."  R. 4:6-2.

Here, plaintiffs and defendants submitted evidence outside the pleadings to the court on the motion to dismiss.  In support of their motion, defendant submitted copies of JVT's bankruptcy petition, the order of discharge from JVT's bankruptcy, a bankruptcy petition of another corporation for which JVT served as president, the certificate of incorporation for Symbiosis, and the certificate of

11

dissolution for Solutions. JVT also submitted a certification that set forth facts that are not articulated in the complaint.

In ruling on the motion to dismiss based on judicial estoppel, the judge primarily based her decision on the pleadings and JVT's statements in his bankruptcy petition, but the judge did not expressly exclude the other evidence. The evidence rules permit a judge to take judicial notice of "records of the court in which the action is pending and of any other court of this state or federal court sitting for this state." N.J.R.E. 201(b)(4).

A judge is permitted to take judicial notice that certain documents were filed and that certain statements were made in those documents, if relevant. See State v. Silva, 394 N.J. Super. 270, 275 (App. Div. 2007) (citing RWB Newton Assocs. v. Gunn, 224 N.J. Super. 704, 710-11 (App. Div. 1988)). A judge may not, however, take judicial notice of the truth of the facts asserted in such documents. Ibid. (quoting Gunn, 224 N.J. Super. at 711).

Here, the judge properly exercised her discretion to take judicial notice of JVT's statements in his bankruptcy petition that he did not own stock in an incorporated or unincorporated business, did not have any claim to accounts receivable, did not have any contingent claims, and was not a director, executive, or more than five percent shareholder in any business. However, as

12

we have explained, in opposing defendants' motion to dismiss on the basis of judicial estoppel, JVT submitted a certification in which he stated that his failure to mention his interest in Solutions was merely "a technical oversight." He set forth facts explaining why he did not disclose that interest in his bankruptcy petition and his potential claims against defendants.

In our view, the presentation of these additional facts, which the court did not expressly exclude and which were relevant to whether judicial estoppel should apply, required the trial court to treat the motion as one for summary judgment under Rule 4:46-2, rather than a motion for dismiss on the pleadings under Rule 4:6-2(e).

### III.

Plaintiffs further argue that the trial court erred by dismissing the complaint on the basis of judicial estoppel. They contend the judge failed to consider JVT's explanation for his failure to disclose in the bankruptcy petition that he had an interest in Solutions and potential claims against defendants for monies owed to him and Solutions.

It is well-established that "[a] party who advances a position in earlier litigation that is accepted and permits the party to prevail in that litigation is barred from advocating a contrary position in subsequent litigation to the

prejudice of the adverse party." Bhagat v. Bhagat, 217 N.J. 22, 36-37 (2014) (citing Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000); Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 620 (App. Div. 1990), aff'd o.b., 124 N.J. 520 (1991)).

"The purpose of the judicial estoppel doctrine is to protect 'the integrity of the judicial process.'" Kimball, 334 N.J. Super. at 606 (quoting Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996)). Thus, "[t]he doctrine prevents litigants from 'playing fast and loose' with, or otherwise manipulating, the judicial process." State v. Jenkins, 178 N.J. 347, 359 (2004) (quoting State, Dep't of Law & Pub. Safety v. Gonzalez, 142 N.J. 618, 632 (1995)).

However, "judicial estoppel is an 'extraordinary remedy,' which should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" Kimball, 334 N.J. Super. at 608 (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)). The party seeking to apply judicial estoppel need not establish that the other party asserted a contrary position in prior litigation in bad faith. City of Atlantic City v. Cal. Ave. Ventures, LLC, 23 N.J. Tax 62, 68-69 (App. Div. 2006).

"We review a trial court's decision to invoke judicial estoppel using an abuse of discretion standard." Terranova v. Gen Elec. Pension Tr., 457 N.J. Super. 404, 410 (App. Div. 2019) (quoting In re Declaratory Judgment Actions Filed by Various Municipalities, Cty. of Ocean, 446 N.J. Super. 259, 291 (App. Div. 2016), aff'd, 227 N.J. 508 (2017)). "A court abuses its discretion when a decision 'is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Id. at 410-11 (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)).

When a party files a bankruptcy petition, the party is required to list, among other things, "a schedule of assets and liabilities" and "a statement of [his] financial affairs." 11 U.S.C. § 521(a)(1)(B)(ii), (iii). "The commencement of a [bankruptcy] case . . . creates an estate . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This section is "intended to sweep broadly to include 'all kinds of property, including tangible or intangible property, [and] causes of action[.]'" In re Kane, 628 F.3d 631, 637 (3d Cir. 2010) (first alteration in original) (quoting Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 241 (3d Cir. 2001)).

Here, the trial court found that JVT's claims were barred by judicial estoppel due to his failure to disclose in his bankruptcy petition that he had an ownership interest in Solutions and claims against defendants for monies owed to that corporation. The judge based her decision solely on the pleadings and the records of JVT's bankruptcy action. However, as we have explained, JVT presented an explanation for his failure to disclose his interest in Solutions and his claims for monies due to that corporation in his bankruptcy petition. The trial court erred by failing to consider this evidence.

We therefore conclude the trial court abused its discretion by determining judicial estoppel barred plaintiffs' claims. Without considering all of the relevant evidence, the court could not decide whether JVT had been "'playing fast and loose' with" the courts by asserting inconsistent positions, and whether judicial estoppel was necessary to prevent "a miscarriage of justice." See Jenkins, 178 N.J. at 359 (quoting Gonzalez, 142 N.J. at 632); Kimball, 334 N.J. Super. at 608 (quoting Ryan Operations, 81 F.3d at 365).

Furthermore, the trial court found that judicial estoppel barred the claims asserted by Solutions. Solutions is, however, a legal entity separate and apart from its shareholders. See State, Dept. of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500 (1983) (citing Lyon v. Barrett, 89 N.J. 294, 300 (1982)). Solutions did

16

not file a petition for bankruptcy and it did not fail to disclose any potential claims in a bankruptcy action. The trial court provided no explanation for applying judicial estoppel to Solutions. On remand, the trial court should reconsider that determination and provide reasons for applying judicial estoppel to the claims asserted by Solutions.

IV.

In view of our decision, we need not consider plaintiff's contention that the trial court erred in denying their motion for reconsideration. We note, however, that in support of the reconsideration motion, JVT submitted a certification in which he stated that on November 17, 2017, he sent an email to the bankruptcy trustee and provided her a copy of the complaint in this case. According to JVT, the trustee declined to reopen the bankruptcy proceeding "at this time."

The trial court was not required to consider this newly-produced evidence when considering the reconsideration matter because this was available in November and should have been presented to the court when plaintiffs opposed the motion to dismiss in February 2018. See Cummings, 295 N.J. Super. at 64 (quoting D'Atria v. D'Atria, 249 N.J. Super. 392, 401-02 (Ch. Div. 1990)). In any event, on remand, the trial court should consider this evidence as well as

any other evidence relevant to the decision of whether judicial estoppel should be applied to plaintiffs' claims.

Accordingly, we reverse the trial court's orders dismissing the complaint and denying plaintiffs' motion for reconsideration. We remand the matter for further proceedings on defendant's motion to dismiss based on judicial estoppel. Defendants may also renew their motion to dismiss the claims against Symbiosis under Rule 4:6-2(e) on other grounds.

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4725-17T1