NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3119-20

IN THE MATTER OF THE
APPLICATION OF THE
BOROUGH OF ENGLEWOOD
CLIFFS, a municipal
corporation of the State of
New Jersey.

_____

APPROVED FOR PUBLICATION

July 15, 2022

APPELLATE DIVISION

Argued April 6, 2022 – Decided July 15, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-6119-15.

Robert A. Magnanini argued the cause for appellant
Borough of Englewood Cliffs (Stone & Magnanini
LLP, attorneys; Robert A. Magnanini, on the briefs).

Thomas F. Carroll, III and Antimo A. Del Vecchio
argued the cause for respondent 800 Sylvan Avenue,
LLC (Hill Wallack LLP and Beattie Padovano, LLC,
attorneys; Thomas F. Carroll, III, Antimo A. Del
Vecchio, and Daniel L. Steinhagen, on the brief).

Joshua D. Bauers argued the cause for intervenor
respondent Fair Share Housing Center (Joshua D.
Bauers, of counsel and on the brief; Adam M. Gordon,
on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

Municipalities have constitutional obligations to provide for their fair share of the regional need for affordable housing.  See In re Adoption of N.J.A.C. 5:96 & 5:97 (Mount Laurel IV), 221 N.J. 1 (2015); the Fair Housing Act, N.J.S.A. 52:27D-301 to -329.4.  After years of litigation and a trial, the trial court found that the Borough of Englewood Cliffs (the Borough) had failed to comply with its constitutional obligations and awarded a builder's remedy to allow affordable housing to be built in the Borough.

Thereafter, the Borough negotiated and entered into settlement agreements to allow affordable housing to be built.  Those settlement agreements were submitted to the trial court and accepted after the court had conducted a fairness hearing.  Following a change in the membership of the Borough's council, the Borough moved to vacate the settlement agreements, contending that two council members who had voted for the agreements had conflicts of interest.  That argument was in direct contradiction to the position the Borough had taken before the trial court and in a related litigation where the Borough had argued that there were no conflicts of interest.  Accordingly, the trial court rejected the Borough's argument for several reasons, including that the Borough was judicially estopped from claiming a conflict.  The trial court, thereafter, entered a final judgment based on the settlement agreements.

The Borough now appeals from the order denying its motion to vacate the settlement agreements and the final judgment enforcing those agreements. We reject the Borough's arguments and affirm.

I.

In 2015, the Borough filed this action seeking a declaration that its affordable housing plan was constitutionally compliant (the DJ Action). The Borough also sought immunity from being sued by third parties to comply with its fair-housing obligations. The Fair Share Housing Center (Fair Share), a non-profit organization that advocates for affordable housing, and 800 Sylvan Avenue, LLC (Sylvan), the owner of property in the Borough, both intervened in the action. Thereafter, Sylvan and Fair Share spent several years trying to negotiate a settlement with the Borough.

On August 27, 2019, when no settlement had been reached, the trial court issued an order and opinion granting Sylvan's motion to terminate the Borough's immunity from builder's remedy lawsuits.[1] The court found that the Borough

---

[1] "A builder's remedy provides a developer with the means to bring 'about ordinance compliance through litigation.'" In re Twp. of Bordentown, 471 N.J. Super. 196, 221 (App. Div. 2022) (quoting Mount Olive Complex v. Twp. of Mount Olive (Mount Olive II), 356 N.J. Super. 500, 505 (App. Div. 2003)).

had acted in "bad faith" and had made a "concerted effort" to avoid compliance with its affordable housing obligations.

Thereafter, the trial judge, Christine A. Farrington, J.S.C., conducted a trial to determine whether the Borough's affordable-housing plan was constitutionally compliant. On January 17, 2020, at the conclusion of phase one of the trial, Judge Farrington issued an order and a thorough 129-page opinion finding that the Borough's affordable housing plan, which had been adopted in 2018, was constitutionally non-compliant. The judge directed the Borough to prepare a new compliance plan and revise its zoning ordinances within ninety days.

On February 12, 2020, at the conclusion of phase two of the trial, Judge Farrington issued an order and written opinion granting Sylvan site-specific relief in the form of a builder's remedy. The judge directed the Borough to re-zone Sylvan's property to allow for the construction of 600 dwelling units, including 120 units of affordable housing.

The Borough refused to comply with the court's orders. It adopted a resolution declaring that it was "not willing to rezone the sites the Court has ordered it to rezone." The Borough also did not adopt a new affordable-housing compliance plan within the ninety days as directed by the trial court.

On April 17, 2020, Judge Farrington issued an order finding the Borough in contempt. To compel compliance, the judge voided the Borough's zoning ordinances, stripped its planning board of the ability to review land-use applications, and appointed a special hearing officer to review development applications, including Sylvan's plan. The Borough twice sought leave to appeal, but we denied those motions.

The Borough then re-instituted settlement negotiations to try to resolve the litigation. On October 4, 2020, the Borough council met to consider approving two settlement agreements: one with Fair Share and one with Sylvan. During that meeting, Hemant Mehta, a Borough resident, objected to the settlement agreements and argued that council members Deborah Tsabari and Edward Aversa should not vote on the agreements because they had conflicts.

Several months before the October 2020 council meeting, Mehta had filed an action in lieu of a prerogative writ seeking, among other things, to restrain Tsabari and Aversa from voting on or participating in all matters related to the Sylvan property. Mehta asserted that Tsabari had a conflict because she owned property within 200 feet of the Sylvan site and Aversa had a conflict because his dental office was located within a proposed overlay zone. That prerogative writ

action was heard by Judge Farrington, who was also presiding over the Borough's DJ Action.

In opposition to Mehta's position on a motion for reconsideration, the Borough filed papers contending that neither Aversa nor Tsabari had conflicts and that the council members' interests were "common with the other members of the public" because the Borough covered a small geographic area and the location of affordable housing within the Borough would have the same effect on all Borough residents, including council members. The court in the Mehta action refused to enter restraints against the council members and ultimately dismissed Mehta's prerogative writ complaint with prejudice.

At the October 4, 2020 council meeting, the Borough attorneys pointed out that Mehta's contentions of conflicts of interest had previously been rejected by the court in his prerogative writ action. Thereafter, no council member recused himself or herself. Instead, the council voted to approve both settlement agreements.

The settlement agreement between the Borough and Sylvan provided that Sylvan would reduce the total number of housing units in its development plan, from 600 units with 120 units of affordable housing to 450 units with 90 affordable units. The agreement with Fair Share also provided for a reduction

in the Borough's total realistic development potential. In the settlement agreement with Fair Share, the parties expressly acknowledged that they were settling the litigation "recognizing that the settlement of <u>Mount Laurel</u> litigation is favored because it ends delays and results more quickly in the construction of homes for lower-income households."

Both settlement agreements included enforcement and waiver provisions. In the Sylvan agreement's waiver provision, the parties "waiv[ed] all rights to challenge the validity or the ability to enforce" the settlement agreement. The parties also waived their right to challenge or appeal any order or decision in the DJ Action. The waiver provision in both settlement agreements also expressly acknowledged "that a change in political control of the Borough Council may occur, but such a change would not constitute a change in circumstances that would warrant a retraction of" the parties' waiver of the right to appeal. The settlement agreement also provided that if a party sought relief related to the DJ Action, the non-breaching party could move to enforce the settlement agreement and the breaching party would be liable for "all legal fees" and "costs" incurred.

On October 8, 2020, after the settlement agreements were signed by the parties, the trial court entered a consent order scheduling a fairness and compliance hearing concerning the settlement agreements. No party challenged

7

the validity of the council's adoption of the two settlement agreements on conflict-of-interest grounds within forty-five days of the council's October 4, 2020 vote.

On December 21, 2020, the trial court held a fairness and compliance hearing at which the Borough asked the court to approve the settlement agreements. Before that hearing, Mehta again objected to the approval of the settlement agreements, contending that council members had conflicts of interest. The Borough submitted opposition to Mehta's position and again took the position that there were no conflicts. In an extensive oral decision, issued on December 22, 2020, Judge Farrington found that the settlement agreements were fair and reasonable to lower-income households and entered a conditional judgment approving the settlement agreements.

As a result of elections conducted in November 2020, the makeup of the Borough's council changed effective January 2021. On April 16, 2021, the Borough filed an application seeking to invalidate the settlement agreements on the grounds that Tsabari and Aversa had disqualifying conflicts of interest that rendered the agreements void ab initio. Fair Share and Sylvan opposed that motion and filed motions to enforce the settlement agreements. After hearing oral argument on May 21, 2021, Judge Farrington issued an order and written

8

opinion denying the Borough's motion to vacate the settlement agreements and enforced the agreements. The judge found that there was no conflict of interest, the Borough was estopped from attacking the settlement agreements, and the Borough's attempt to void the settlement agreements was in breach of the express terms of the agreements. Judge Farrington also held that even if conflicts had existed, the rule of necessity would have permitted the Borough council to lawfully approve the settlement agreements.

On May 24, 2021, the trial court entered a final judgment based on the settlement agreements. Thereafter, the court issued an order awarding Sylvan $109,603.53 in counsel fees and costs for breach of the settlement agreement. The Borough now appeals from the May 21, 2021 order and the May 24, 2021 final judgment.

II.

On appeal, the Borough makes five arguments. It contends that the trial court erred in ruling that (1) the settlement agreements were not void ab initio because of conflicts of interest; (2) the Borough was judicially estopped from raising the conflict-of-interest argument; (3) alternatively, if there were conflicts, the rule of necessity allowed council members to vote on the

settlement agreements; (4) the Borough breached the settlement agreements; and (5) Sylvan was entitled to attorneys' fees and costs.

We hold that the Borough is estopped on several grounds from claiming that any council member had conflicts of interest in voting on the settlement agreements. Moreover, even if the alleged conflicts are considered, we hold that there were no disqualifying conflicts by council members on the votes to approve the settlement agreements.

A.    Estoppels and Waiver.

There are several legal and equitable doctrines that estop the Borough from arguing that any council member had a conflict of interest in voting on the settlement agreements. Those doctrines include judicial estoppel, equitable estoppel, collateral estoppel, and waiver. In addition, the Borough's challenge to the adoption of the settlement agreements is time-barred under Rule 4:69-6. Any one of those grounds is sufficient to affirm the orders on appeal. We address all grounds to emphasize that the Borough has no legal or equitable basis to continue to delay its constitutional obligations to allow affordable housing to be built in the Borough.

1. The Estoppels.

Under the doctrine of judicial estoppel, a party who advances a legal position that is accepted by the court is barred from advocating a contrary position in a subsequent litigation. Bhagat v. Bhagat, 217 N.J. 22, 36 (2014). The purpose of the doctrine "is to protect 'the integrity of the judicial process.'" Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996)).

Collateral estoppel is an equitable remedy that bars re-litigation of any issue that was determined in a prior action. In re Liquidation of Integrity Ins. Co., 214 N.J. 51, 66 (2013). Collateral estoppel applies when

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006)).]

Equitable estoppel "is a doctrine 'founded in the fundamental duty of fair dealing imposed by law.'" Id. at 86 (quoting Knorr v. Smeal, 178 N.J. 169, 178

11

(2003)). "[T]he doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his [or her] detriment," and it is "invoked in the interests of justice, morality and common fairness." Ibid. (quoting Knorr, 178 N.J. at 178). "[T]o establish equitable estoppel, [a party] must show that [the other party] engaged in conduct, either intentionally or under circumstances that induced reliance, and that [the first party] acted or changed [its] position to [its] detriment." Knorr, 178 N.J. at 178. "Equitable estoppel may be invoked against a municipality 'where interests of justice, morality and common fairness clearly dictate that course.'" Middletown Twp. Policemen's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000) (quoting Gruber v. Mayor & Twp. Comm. of Raritan, 39 N.J. 1, 13 (1962)).

Judge Farrington correctly determined that the doctrine of judicial estoppel precluded the Borough from claiming a conflict of interest by council members Tsabari and Aversa. Judge Farrington, who was the same judge who had made the ruling in the Mehta prerogative writ action, found that the Borough had asserted that neither council member Aversa nor Tsabari had any conflicts of interest in the Mehta action. The judge found that the Borough had successfully asserted that prior inconsistent position in the Mehta lawsuit,

allowing the doctrine of judicial estoppel to apply. We agree with Judge Farrington's determination. Moreover, we discern no abuse of discretion in the judge's decision to invoke judicial estoppel. See Terranova v. Gen. Elec. Pension Tr., 457 N.J. Super. 404, 410 (App. Div. 2019) (explaining that we use an abuse of discretion standard in reviewing a trial court's decision to invoke judicial estoppel).

Indeed, not only did the Borough take that position in the Mehta action, but it also took the position in the DJ Action. Mehta also objected to the settlement agreements when those agreements came before the council for approval. Council members relied on the Mehta decision in subsequently voting to authorize the settlement agreements. To allow the Borough to now do an about-face and argue that Aversa and Tsabari have conflicts of interest would be inconsistent with the principles of judicial estoppel, equitable estoppel, and collateral estoppel. Therefore, we affirm the trial court's order on all these grounds.

The Borough argues that the court in the Mehta action did not rely on the position taken by the Borough. In that regard, the Borough points out that before it filed any papers, the Mehta court had already ruled that there was no conflict of interest. Mehta, however, filed a motion for reconsideration and in opposition

13

to that motion the Borough argued that there was no conflict of interest. The court in Mehta denied the motion for reconsideration, thereby adopting and relying on the Borough's position.

Indeed, in applying judicial estoppel, Judge Farrington expressly found that she had accepted the Borough's argument regarding the lack of conflicts of interest by council members. That factual determination is amply supported by the record, and we agree with the trial judge's legal conclusion that judicial estoppel applied.

For the first time on appeal, the Borough argues that judicial estoppel does not apply because its attorneys in the Mehta action were not properly appointed. We reject that argument for two reasons. First, we decline to consider an issue not properly presented to the trial court. State v. Robinson, 200 N.J. 1, 20 (2009) (explaining that appellate courts generally will not consider issues that could have been but were not raised before the trial court). Second, the Borough's asserted position highlights its repeated attempts to delay and obfuscate its obligations. The Borough was aware that it was being represented by attorneys in the Mehta action. To now allow it to say that those attorneys were not properly appointed would be unfair to Fair Housing, Sylvan, and the trial court —all of whom had no reason to question the representation of the Borough's

14

attorneys. Moreover, allowing that questionable argument would serve only to undermine the integrity of the judicial process.

2.     Waiver.

The Borough also waived its right to raise the conflict-of-interest argument. Paragraph 7.11 of the Sylvan settlement agreement provides that "each of the parties waives all rights to challenge the validity or the ability to enforce this Agreement." The agreement also stated that the parties "agree to waive any and all appellate rights that they may have." Those provisions preclude the Borough from making the arguments the Borough now seeks to assert on this appeal. See Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141 (1998); see also In re Cong. Dists. by N.J. Redistricting Comm'n, 249 N.J. 561, 578-79 (2022) (rejecting the challenge to the Congressional redistricting maps in part on the basis that the plaintiffs waived their conflict-of-interest claim).

The Borough was aware of the alleged conflicts before it entered into the settlement agreements. Mehta had raised the conflicts in June 2020 and again in October 2020. The Borough opposed Mehta's position both in his litigation and at the council hearing to consider the settlement agreements. In addition,

Sylvan negotiated for a waiver of a right to challenge the settlement agreements. All those facts combine to establish a clear and binding waiver by the Borough.

### 3. The Time Bar.

Rule 4:69-6 states that an action seeking to overturn a municipal decision shall generally not "be commenced later than [forty-five] days after the accrual of the right to the review." The right to review the decision of the Borough council concerning the approval of the settlement agreements accrued on October 4, 2020. Consequently, the Borough was time-barred from seeking to challenge its own action.

### B. The Alleged Conflicts.

Having held that the Borough is estopped from raising the alleged conflicts-of-interest argument, we arguably need not address the substance of the contention. We, nonetheless, evaluate the issue because if there had been a substantive disqualifying conflict, principles of good governance would warrant a review. Moreover, if there was a disqualifying conflict, the settlement agreements might, as the Borough argues, be void ab initio. In conducting the substantive review, however, we do it in the context of the prior positions taken by the Borough because the Borough's prior contention that no conflict existed demonstrates, at a minimum, that there were no clear conflicts of interest.

16

The Local Government Ethics Law (the Ethics Law), N.J.S.A. 40A:9-22.1 to -22.25, creates a statutory code of ethics that governs when a disqualifying conflict of interest arises for a local government official. The Ethics Law and the common law guide courts in evaluating when conflicts arise. See Piscitelli v. City of Garfield Zoning Bd. of Adjustment, 237 N.J. 333, 349-50 (2019); Grabowsky v. Twp. of Montclair, 221 N.J. 536, 552 (2015). "The overall objective 'of conflict of interest laws is to ensure that public officials provide disinterested service to their communities' and to 'promote confidence in the integrity of governmental operations.'" Piscitelli, 237 N.J. at 349 (quoting Thompson v. City of Atlantic City, 190 N.J. 359, 364 (2007)).

The Ethics Law provides:

> [n]o local government officer or employee shall act in his [or her] official capacity in any matter where he [or she], a member of his [or her] immediate family, or a business organization in which he [or she] has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his [or her] objectivity or independence of judgment . . . .
>
> [N.J.S.A. 40A:9-22.5(d).]

See also N.J.S.A. 40A:9-22.2 (setting forth the Legislature's declarations concerning the duties of local government officials).

17

"We must construe N.J.S.A. 40A:9-22.5(d) to further the Legislature's expressed intent that '[w]henever the public perceives a conflict between the private interests and the public duties of a government officer,' 'the public's confidence in the integrity' of that officer is 'imperiled.'" Piscitelli, 237 N.J. at 351 (quoting N.J.S.A. 40A:9-22.2(b) to (c)).  Disqualification is required when a public official has (1) a direct pecuniary interest; (2) an indirect pecuniary interest; (3) a direct personal interest; or (4) an indirect personal interest. Grabowsky, 221 N.J. at 553 (quoting Wyzykowski v. Rizas, 132 N.J. 509, 525 (1993)).

"[A] court's determination 'whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case.'" Piscitelli, 237 N.J. at 353 (quoting Grabowsky, 221 N.J. at 554).  "A conflicting interest arises when the public official has an interest not shared in common with the other members of the public." Wyzykowski, 132 N.J. at 524.  Accordingly, "[t]he ethics rules must be applied with caution, as '[l]ocal governments would be seriously handicapped if every possible interest, no matter how remote and speculative, would serve as a disqualification of an official.'" Grabowsky, 221 N.J. at 554 (second alteration in original) (quoting Wyzykowski, 132 N.J. at 523).  "It is essential that municipal offices be filled

by individuals who are thoroughly familiar with local communities and concerns." Ibid. Consequently, conflict-of-interest rules "do not apply to 'remote' or 'speculative' conflicts because local governments cannot operate effectively if recusals occur based on ascribing to an official a conjured or imagined disqualifying interest." Piscitelli, 237 N.J. at 353.

The trial judge found that council members Tsabari and Aversa were not disqualified under the common-impact exception. In that regard, Judge Farrington reasoned that the settlement agreements with Sylvan and Fair Share concern the development of affordable housing in the Borough and that affordable housing impacted all the Borough's residents. The judge also found that the approvals of the settlement agreements were analogous to the adoption or updating of a master plan. Judge Farrington pointed out that the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163, provides that when a master plan is being adopted, the notice must be circulated within the municipality. N.J.S.A. 40:55D-13(1). The clerk of an adjoining municipality is only entitled to notice when the affected properties are within 200 feet of the adjoining municipality. N.J.S.A. 40:55D-13(2). The judge then reasoned that the Fair Housing Act does not contain a 200-foot notice requirement. Consequently, Judge Farrington

found that the 200-foot notice requirement for zoning and variance applications and the resulting conflict implication did not apply to the settlement agreements.

We agree with Judge Farrington's reasoning. The settlement agreements were not site-specific. Instead, they resolved a litigation where the court had already found that the Borough was not constitutionally compliant in allowing affordable housing. Although the Sylvan settlement agreement involved specific property, the impact of the agreement was to satisfy the Borough's overall obligation to allow affordable housing. That obligation is not site-specific; rather, that obligation is Borough-wide. Consequently, no council member had an interest that was different from any other Borough resident.

Moreover, the approval of the settlement agreements was not analogous to a zoning application. The Borough had filed a declaratory-judgment action seeking the declaration of its compliance with its constitutional affordable housing obligations. The Borough council's actions involving the adoption of an affordable housing plan, as well as its action to settle the DJ Action, involved matters that would equally impact all Borough residents. Accordingly, Judge Farrington's findings concerning the Borough-wide impact of approving the settlement agreements are supported by substantial credible evidence, and we

20

discern no legal error in the determination that no council member, including Tsabari and Aversa, had a disqualifying conflict of interest.

Having determined that no council member who voted to approve the settlement agreements had a disqualifying conflict, we need not address whether the trial court was also correct in finding that the rule of necessity would have applied if conflicts did exist.

C.    The Breach and Award of Fees and Costs.

The Borough contends that the trial court erred in finding that it breached the settlement agreements and in awarding Sylvan counsel fees and costs. Both those arguments depend on the Borough's contention that the settlement agreements are void. Because we have rejected that argument, Judge Farrington was correct in finding that the Borough had breached the settlement agreements and in awarding Sylvan attorneys' fees and costs.

In Article VII, paragraph 7.11 of the Sylvan settlement agreement, the parties expressly waived their right "to challenge the validity or the ability to enforce" the settlement agreement. The Borough agreed to waive "any and all" claims and appellate rights related to the DJ Action in both agreements. When the Borough brought its motion to vacate the settlement agreements, it violated those provisions and thereby breached the agreements. The settlement

agreements with both Fair Share and Sylvan also stated that if a party breached the agreement, the other party would be entitled to counsel fees and costs.

III.

Finally, we note that by holding that the settlement agreements are valid and enforceable, the Borough has no right of further appeal. As already pointed out, the Borough waived its right to appeal in both settlement agreements. Sylvan and Fair Share entered into the settlement agreements recognizing that even though they had won at the trial level, continued litigation and appeals would delay the actual building of affordable housing in the Borough. The Borough may disagree with our ruling affirming the trial court, but it does not have the right to continue to delay complying with its constitutional obligations to allow affordable housing to be built. Sylvan and Fair Share have the right to move forward with the development of affordable housing. The time for delaying constitutional compliance is over.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3119-20